THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville Division

| | |
|---|---|
| ROSANN M. WILKS, et al. ) | |
| ) | |
| Plaintiffs, ) | Civil Action: 3-02-0837 |
| ) | |
| v. ) | JUDGE TRAUGER |
| ) | JUDGE KNOWLES |
| THE PEP BOYS ) | |
| ) | (JURY DEMAND) |
| Defendant. ) | |

## PEP BOYS' REPLY IN SUPPORT OF ITS MOTION TO AMEND ITS ANSWER

By leave of the Court, Defendant, The Pep Boys - Manny, Moe & Jack (the "Pep Boys") hereby replies in support of its Motion For Leave to Amend Its Amended Answer ("Pep Boys' Motion"). For the reasons set forth below and in its opening Memorandum of Points and Authorities, Pep Boys respectfully requests that the Court permit it to Amend its Amended Answer.

**I.    The Standard Of Federal Rule Of Civil Procedure 15(a), Not That Of Federal Rule Of Civil Procedure 16, Governs This Motion.**

Plaintiffs offered no factual or legal basis to apply the "good cause" standard for a motion under Rule 16 for leave to modify the scheduling order, rather than the liberal standard in Rule 15(a) that applies to motions to amend pleadings. The scheduling orders in this case did not set a cutoff date to amend the pleadings. See DKT # 63, 100, 147, 255. Pep Boys does not seek the extension of any current deadline as a result of its motion. See Pep Boys' Motion at 8. And Plaintiffs do not claim that any extensions would be needed. Therefore, this Motion will not affect the current scheduling order and the good cause standard of Rule 16 does not apply to Pep Boys' Motion.

1-WA/2470518.1

## II. Under Either Standard, Pep Boys Has Met Its Burden To Obtain Leave To Amend Its Amended Answer To Clarify And Add Affirmative Defenses.

### A. Pep Boys Has Met The Good Cause Standard of Rule 16.

Even if Rule 16 applied, Pep Boys has demonstrated good cause to amend its Amended Answer through its diligence in bringing the additional and more specific defenses to the Court's attention promptly when the first flat rate plaintiff to testify under oath made the damaging admissions in his recent deposition, and because plaintiffs do not contend they would be prejudiced by the amendment.[1] See e.g. Kaylor v. Radde, No. 3:03CV7612, 2005 WL 282851, at *2-3 (N.D. Ohio Feb. 3, 2005) (holding that both Fed. R. Civ. P. 16 and Fed. R. Civ. P. 15(a) standards satisfied when defendant learned of need to amend answer as a result of deposition testimony and analysis of video-tape, even though request made eight months after deadline for amendment of pleadings); Burton v. U.S., 199 F.R.D. 194, 196-199 (S.D.W. Va. 2001) (holding that both Fed. R. Civ. P. 16 and Fed. R. Civ. P. 15(a) standards satisfied when defendant learned of need to amend answer based on recent deposition testimony).

### B. Pep Boys Has Met The Liberal Standard of Rule 15(a).

Courts freely grant motions to amend at any stage of the proceedings. See Estes v. Kentucky Util. Co., 636 F.2d 1131 (6th Cir. 1980) (affirming leave to amend forty-one months after original answer filed); Cooper v. Am. Employers' Ins. Co., 296 F.2d, 303 (6th Cir. 1961) (holding that leave to amend answer on eve of trial should have been granted when defendant acquired new information when taking plaintiff's deposition). Neither of the two arguments Plaintiffs raise in opposition to Pep Boys' Motion; that Pep Boys unduly delayed its motion and that the amendments would be futile, has merit.

---

[1] After Pep Boys filed this motion, a second flat rate plaintiff, Juan Cardenas, appeared for deposition. Mr. Cardenas made similar admissions that he intentionally falsified his time records with the knowledge that it would (and did) increase his pay. See infra at 4, n.3.

### 1. Pep Boys Acted Promptly When Plaintiff Zoller Testified He Had Falsified His Time Records To His Own Advantage.

Pep Boys did *not* unduly delay in seeking to amend its Amended Answer to clarify its statutory defense and to add its equitable defenses. Pep Boys' Motion did not contend that Pep Boys only recently learned that Plaintiffs claim they worked off-the-clock. See Plaintiffs' Opposition ("Pltfs' Opp.") at 4-5. It stated that Pep Boys only recently obtained evidence that some *plaintiffs intentionally falsified their time records* (by intentionally working off-the-clock) to mask their low productivity and/or to increase their pay for training and paid time off. See Pep Boys' Motion at 2-3 ("Defendant was not on notice that one or more of the Plaintiffs engaged in such activities. Rather, Plaintiffs have alleged, to the contrary, that Pep Boys required them to work off-the-clock.").

Plaintiffs effectively delayed the deposition testimony of the highly compensated flat rate plaintiffs for a full year after Pep Boys first noticed the depositions of three of their number. See Exh. A (July 19, 2004 notice of deposition of Roland, Scales & Wollman). After a year of delay and substitutions, when David Zoller finally appeared for deposition on July 20, 2005, he readily admitted that he made a personal decision to work the off-the-clock hours to meet Pep Boys' reasonable productivity standards. See Pep Boys' Motion at 2-3. Pep Boys supported its recitation of Mr. Zoller's testimony with specific cites to the deposition transcript. He stated, under oath, that he was repeatedly told to keep up his productivity, see Pep Boys' Motion at 2-3; Pltfs' Opp. at 9, but he did *not* testify that Pep Boys managers told him to work off-the-clock.

In the excerpts Plaintiffs cite, Mr. Zoller could not remember what his Assistant Service Manager said about working off-the-clock. What he did remember, that "[managers] would encourage you to clock out so that your productivity would be high," id., is not tantamount to

claiming they told him to clock out and keep working.[2] Throughout their Opposition, Plaintiffs ask the Court to *assume* that because Pep Boys had productivity standards, and that managers expected and encouraged employees to meet them, plaintiffs were forced to work off-the-clock. However, Pep Boys cannot be held liable for off-the-clock work based solely on its requirement that employees meet production standards. See Brumbelow v. Quality Mills, Inc., 462 F.2d 1324, 1327 (5th Cir. 1972) (setting normal production standards does not impose FLSA liability upon employer, even if evidence showed that employees had to meet productivity standards to keep their jobs).[3]

Pep Boys moved to clarify and amend its Amended Answer to address the issues raised by Mr. Zoller's testimony within weeks of receiving the transcript of his deposition. That does not constitute undue delay.

### 2. Pep Boys' Statutory Defenses Are Not Futile.

It is not legally futile for Pep Boys to clarify its current affirmative defense that it has paid all wages due to Plaintiffs to specifically assert statutory defenses under 29 U.S.C. § 207(e) and/or 29 U.S.C. § 207(h)(2) for <u>overtime premium wages</u> already paid to Plaintiffs. Plaintiffs err when they contend that Pep Boys seeks to use this defense to take a credit for training wages and paid time off. Compare Pep Boys' Motion at 4, 8 and Exh. B to same at ¶¶ 7-10 with Pltfs' Opp. at 5-8. Pep Boys already pled in its Amended Answer that it paid Plaintiffs all overtime

---

[2] Thus, Plaintiffs' statement that Pep Boys' equitable estoppel defense is without merit because " it is clear that management encouraged the employees to work off-the-clock, not that the employees did it for their own benefit," is inaccurate. See Pltfs' Opp. at 10. Moreover, Mr. Zoller's testimony does not establish any employee's motivation other than his own.

[3] Since Mr. Zoller's deposition, a second flat rate plaintiff, Juan Cardenas, has testified under oath that he made a personal decision to work off-the-clock, see Exh. B at 54 (excerpts from deposition of Juan Cardenas), and knew that inflating his productivity level by working off-the-clock would increase his pay, id. at 96. Mr. Cardenas affirmatively testified that no manager ever told him to clock out and keep working. Id. at 56-57. Rather, Mr. Cardenas testified that his manager told him to check more cars to increase his productivity. Id. at 134-136. Mr. Cardenas admitted that he knew Pep Boys prohibited employees from working off-the-clock, id. at 31-32, that he enforced this policy when he was a manager earlier in his career with Pep Boys, id at 29-32, 112, and that an employee at the store where he had been a manager was disciplined for working off-the-clock, id. at 30, 112.

due by law. Id. Pep Boys now only seeks to specify that it is proceeding with such a defense based in part on *overtime payments it has made to Plaintiffs that equal and/or exceed one and one-half times the regular rate of pay*, as expressly permitted by 29 U.S.C. § 207(e)(5) and § 207(h). See Exh. B at 38-39 (sworn testimony of J. Cardenas that he was paid for overtime work); see also Exh. C (Technicians' and Mechanics' Compensation System document explaining how flat rate employees are paid for overtime); Exh. E (explanation of flat rate overtime calculations in California).

Pep Boys' factually and legally distinct arguments that Plaintiffs who intentionally inflated their variable benefit by working off-the-clock should be estopped from claiming a windfall for their deception or, in the alternative, that Pep Boys should receive an offset for the excessive pay Plaintiffs obtained through this deception, were raised in the section of the motion concerning its equitable defenses. See Pep Boys' Motion at 3, 7-8.

### 3. Pep Boys' Equitable Defenses Are Not Futile.

Plaintiffs themselves cite cases that recognize equitable estoppel is a valid defense in an FLSA case. They assert in their Opposition that "numerous courts have determined that equitable estoppel is not a valid defense under the FLSA," but cite only one case, from a district court outside the Sixth Circuit, for that proposition. See Pltfs' Opp. at 8, citing Morrison v Executive Aircraft Refinishing, Inc., No. 04-81079, 2005 U.S. Dist. LEXIS 10190 (S.D. Fla. April 8, 2005). First, Morrison is not controlling precedent in this district. Second, the Morrison court erred in holding that equitable estoppel is not recognized under the FLSA, as evidenced by three cases cited by Plaintiffs, see Pltfs' Opp. at 10, and three cases cited by Pep Boys, see Pep Boys' Motion at 6-8. Third, the Sixth Circuit case cited in the Morrison decision, Burry v. Nat'l Trailer Convoy, Inc. 338 F.2d 422, 426-27 (6th Cir. 1964), does not stand for the proposition that

equitable estoppel can never be a valid affirmative defense to FLSA claims. Rather, the Burry court denied an estoppel defense under specific factual circumstances in which the employer had *actual knowledge* that the employee's time sheets were inaccurate, and the employer and employee had entered into a legally void contract designed to circumvent the FLSA. Id. at 426-428.

Moreover, this is not the stage of the case to determine whether Pep Boys has proven that Mr. Zoller intentionally falsified his time records to increase his pay. Pep Boys simply seeks the opportunity to present the evidence to a fact finder. Plaintiffs may dispute the proper characterization of Mr. Zoller's sworn testimony, but that factual dispute does not bar Pep Boys' assertion of a legally valid defense. Pep Boys is entitled to the opportunity to prove that some plaintiffs worked off-the-clock of their own volition to inflate their compensation for paid time off. See Exh. C.[4]

Because equitable estoppel is a legally valid defense to a claim under the FLSA, and Pep Boys has obtained evidence from at least two plaintiffs that is directly relevant to the defense, it

---

[4] Pep Boys respectfully asks the Court to disregard the numerous factual errors in Plaintiffs' Opposition, none of which are supported by a record citation. A series of examples may be found in n. 1 of the Opposition concerning the flat rate commission system. For flat rate employees in 48 states, Pep Boys computes both the commission (labor hours times flat rate) and hourly wages (clock hours times variable benefit rate ("VBR"), including premium overtime pay) and pays the greater amount. See Exh. C. In many instances, flat rate employees, who are exempt from overtime requirements of the FLSA pursuant to 29 U.S.C. § 207(i), also receive overtime premium pay in addition to their commission. Id. The VBR, which is unique to each flat rate employee is 50% to 85% of the employee's flat rate or $6.50, whichever is greater. Id. More than one-third of the flat rate plaintiffs had flat rates of $18.00 or more, while fewer than 10% had flat rates of $13.00 or less. See Exh. D. Therefore, it was very *unusual* that $6.50 would be used in the hourly wage calculation. In California, flat rate employees receive premium overtime pay for all hours worked over 40, even if their commission is greater than their hourly pay calculation. See Exh. E. Plaintiffs also erred in stating that plaintiffs received compensation based on their VBR for sick days, vacation, and training. See Exh. C (chart showing higher "average hourly rate," not VBR, used to pay for vacation and training time). Finally, plaintiffs correctly state in n. 1 that the "higher an employee's productivity rate the more they will be paid for days off," see Pltfs' Opp. at 2, f.n.1, but contradict themselves later by stating that each flat rate plaintiff who responded to interrogatories stated that "they received no benefit from performing work off-the-clock" and that David Zoller explained that he did not think he would gain any financial advantage by performing work off-the-clock," see id. at 3, 10. The latter statement is not even an accurate recitation of Mr. Zoller's responses to Interrogatories No. 4(b) and 9(a) that the VBR increased as the productivity rate increased and that employees received a higher productivity rate by working off-the-clock. See Exh. D. to Pep Boys' Motion.

would not be futile for Pep Boys to amend its answer to add an affirmative defense based on the theory of equitable estoppel. See Cooper, 296 F.2d at 307 ("the proposed amended pleading must be viewed in the light most favorable to the pleader; it should not be rejected unless it appears to a *certainty* that the pleader would not be entitled to any relief under it . . . *it is not desirable that the court at this point in the proceedings should pass on the validity or invalidity of the pleading.*") (citations omitted) (emphasis added).

### 4. Plaintiffs do not even challenge the validity of Pep Boys' equitable offset defense.

Plaintiffs concede, by failing to challenge, the validity of the equitable offset defense.

### 5. Plaintiffs do not offer any other reasons why Pep Boys should not be permitted to amend the Amended Answer.

The only bases Plaintiffs argue for denial of Pep Boys' Motion are undue delay and futility. Significantly, Plaintiffs do not claim that they will suffer prejudice if the Court grants Pep Boys leave to Amend its Amended Answer. And no such prejudice does exist, because the evidence related to such defenses are exclusively within the Plaintiffs' control. As such, it is appropriate for the Court to grant Pep Boys' leave to amend its Amended Answer. See Estes, 636 F.2d at 1134 (indicating that the critical factors in deciding whether to deny a motion to amend are notice and substantial prejudice); See also Kaylor, 2005 WL 82851, at *3 (granting motion to amend when there would be no undue prejudice on plaintiff).

## CONCLUSION

For the foregoing reasons, Pep Boys respectfully asks the Court to grant its Motion to Amend its Amended Answer.

Dated: October 25, 2005


Respectfully submitted,

   /s Fred Bissinger
Mark C. Travis (Bar No. 011165)
Fred Bissinger (Bar No. 19671)
Wimberly Lawson Seale Wright & Daves, PLLC
200 Fourth Avenue, North, Suite 900
Nashville, TN 37219
(615) 727-1000 (telephone)
(615) 727-1001 (facsimile)

   /s Corrie L. Fischel
Kathy B. Houlihan *(Pro hac vice)*
Corrie L. Fischel *(Pro hac vice)*
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-3000 (telephone)
(202) 739-3001 (facsimile)

Michael L. Banks *(Pro hac vice)*
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5387 (telephone)
(215) 963-5001 (facsimile)

Attorneys for Defendant
The Pep Boys-Manny, Moe & Jack

## CERTIFICATE OF SERVICE

I, Corrie L. Fischel, hereby certify that a true and exact copy of Defendant Pep Boys' Reply to Pltfs' Opp. to Pep Boys' Motion For Leave To Amend Its Amended Answer has been filed with the Court via the Court's Electronic Court Filing System (CM/ECF), on the 25th day of October, 2005, and served upon the following via the same method:

>Gregory K. McGillivary
>Heidi Burakiewicz
>WOODLEY & McGILLIVARY
>1125 15TH Street, NW, Suite 400
>Washington, DC 20005

:

>Charles P. Yezbak, III
>The Pilcher Building
>144 Second Avenue North, Suite 200
>Nashville, TN 37201

/s Corrie L. Fischel
Corrie L. Fischel