## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

### Nashville Division

| | | |
|---|---|---|
| **ROSANN M. WILKS, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action: 3-02-0837** |
| | ) | |
| **v.** | ) | **JUDGE TRAUGER** |
| | ) | **JUDGE KNOWLES** |
| **THE PEP BOYS** | ) | |
| | ) | **(JURY DEMAND)** |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT PEP BOYS' MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

1-WA/2529345.1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES…………………………………………………………..……iii

INTRODUCTION..................................................................................................................1

SUMMARY OF UNDISPUTED MATERIAL FACTS………………………………......…2

    Pep Boys' Business…………………………………………………………………..2

    Rationale For Flat Rate Commission
    System…………………………………………………………………………………3

    How the Flat Rate Commission System Works…………………………………….....3

    Pep Boys' Alternative Guaranteed Minimum Hourly Pay Method ………………….……4

        1.  Plaintiff Juan Cardenas ……………………………………….……………………...7

        2.  Plaintiff Frank Clyne……………………………………………………………...7

        3.  Plaintiff Ronald Cole…………………………….……………………………...8

        4.  Plaintiff Kevin Cynova…………………………………….…………………8

        5.  Plaintiff Donald Gillett…………………………………………………………9

        6.  Plaintiff Horacio Muro…………………………………….…..……………..9

        7.  Plaintiff Charles Sparks.………………………….……………………10

        8.  Plaintiff Nhut Tran……..……………………….……………...…………………10

        9.  Plaintiff Phong Tran.………………………….……….…… ……………………11

      10. Plaintiff David Zoller……………………………………………………………11

ARGUMENT………………………………………………………………………………12

    PLAINTIFFS ARE EXEMPT UNDER THE FLSA'S RETAIL
    COMMISSION EXEMPTION…………….…………………………………………......13

    A.  Pep Boys' Stores Are "Retail And Service
       Establishments"…...............................................................................……13

B.  Pep Boys Paid The Flat Rate Plaintiffs A Regular Rate Of
At Least One And One-Half Times The Federal Minimum Wage
For All Hours They Worked In All Workweeks For Which Pep Boys
Claimed The Exemption……………...............………………………….…......16

C.  More Than One-Half Of The Compensation Pep Boys Paid To Plaintiffs
During Their Relevant Periods Was In The Form Of Commission…………………17

CONCLUSION……………………………………………………………………………..19

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)……………………………...…….12

*Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996 (6th Cir. 2005)……………...…12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)……………………………………………12

*Erichs v. Venator Group, Inc.*, 128 F. Supp. 2d 1255 (N.D. Cal. 2001)……………….…….17

*Gieg v. DRR, Inc.*, 407 F.3d 1038 (9th Cir. 2005)…..…..…….………………………13, 15

*Herman v. Suwannee Swifty Stores, Inc.*, 19 F. Supp. 2d 1365 (M.D. Ga. 1998)……….17, 19

*In re Morris*, 260 F. 3d 654 (6th Cir. 2001)……………………………………………12

*Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251 (11th Cir. 2001)………………………13, 14, 18

*Marshall v. New Hampshire Jockey Club, Inc.*, 562 F.2d 1323 (1st Cir. 1977)……………..13

*Mechmet v. Four Seasons Hotel, Ltd.*, 825 F.2d 1173 (7th Cir. 1987)…..……………...……19

*Reich v. Cruises Only, Inc*, C.A. No. 95-660-CIV-ORL-19, 1997 WL 1507504, (M.D. Fla.

June 5, 1997) ……………...…………………………………………………………...14

*Viciedo v. New Horizons Computer Learning Center of Columbus*, 246 F. Supp. 2d 886 (S.D.

Ohio 2003)..…………..…………………………………………………………....15, 16

*Wood v. Central Sand & Gravel Co.*, 33 F. Supp. 40 (W.D. Tenn. 1940)……………….…14

**STATUTES AND REGULATIONS**

29 U.S.C. § 203(i)…………………………………………………………...…….14

29 U.S.C. § 207(a)…………………………………………………………………13

29 U.S.C. § 207(i)…..…………………………………………………………...Passim

29 C.F.R. § 516.16…………..…………………………………………………..…13

29 C.F.R. § 778.117…………..……………………………………………..…….7

29 C.F.R. § 779.24…………..…………………………………………………..…14

29 C.F.R. § 779.313 ………………………………………………………………14, 15

29 C.F.R. § 779.314………………………………………………………..……14

29 C.F.R. § 779.318(a)…………………………………………………………16

29 C.F.R. § 779.320 …………………………………………………………13

29 C.F.R. § 779.324 …………………………………………………………15

29 C.F.R. § 779.331………………………………………………………..……15

29 C.F.R. § 779.400………………………………………………………..……13

29 C.F.R. § 779.411………………………………………………………..……14

29 C.F.R. § 779.412………………………………………………………………17

29 C.F.R. § 779.413(b)……………………………………………………………18

29 C.F.R. § 779.416………………………………………………………………17

**MISCELLANEOUS**

1982 DOLWH LEXIS 40 (July 14, 1982)……………………………………..17

1998 DOLWH LEXIS 84 (October 29, 1998)..……………………....……….16, 18

2003 DOLWH LEXIS 2 (March 17, 2003)…..……………………………..…13

DOL Wage & Hour Field Operations Handbook § 21ca04…..……...……………..…… 15

DOL Wage & Hour Field Operations Handbook § 21h04(d)…..……………….....…… 18

DOL Wage & Hour Field Operations Handbook § 21h03(b)…..……………….….…..16

Fed R. Civ. P. 56(b)…………………………………………………………..…..1

Fed R. Civ. P. 56(c)……………………………………………………………..…12

Wage & Hour Interpretative Bulletin No. 6, Paragraph 25, December 1938,

      Revised June 1941..………………………………………………………...13

Local Rule 8(b)(7)………………………………………………………..……………1

Defendant, The Pep Boys – Manny, Moe & Jack ("Pep Boys"), pursuant to Fed. R. Civ. P. 56(b) and Local Rule 8(b)(7), submits this Memorandum of Law in support of its Motion for Partial Summary Judgment with regard to the claims of ten flat rate plaintiffs.

## INTRODUCTION

The ten plaintiffs ("Plaintiffs") who are the subject of this motion worked as technicians, mechanics, or master technicians (collectively referred to as "flat rate employees") for Pep Boys. Flat rate employees earn a productivity-based commission on the labor charges paid by Pep Boys' customers for services and repairs. Pep Boys guaranteed flat rate employees a minimum hourly wage for all hours worked but, almost uniformly, their income was in the form of commissions.

Plaintiffs claim that Pep Boys deprived them, and other purportedly similarly situated flat rate employees, of overtime compensation because (1) Pep Boys' flat rate commission system is unlawful; (2) Pep Boys "shaved" from their time records hours that the employees worked and recorded; (3) Pep Boys required them to perform work "off-the-clock;" and (4) Pep Boys failed to include compensation for promotional contests or "spiffs" and longevity bonuses in their regular rate of pay. The first claim is baseless, as a matter of law. Pep Boys will not dispute the second and third claims, for the purposes of this motion only, because even crediting Plaintiffs with the hours they claim, under oath, were shaved or worked off the clock, Plaintiffs were exempt from the overtime pay provisions of federal law. Finally, the fourth claim is irrelevant to exempt employees.

Pep Boys now moves for summary judgment on the claims by these ten flat rate plaintiffs. Simply stated, the undisputed facts establish that Plaintiffs were exempt under Section 7(i) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(i). Therefore, Plaintiffs have no

cognizable claim to overtime pay and Pep Boys respectfully requests that the Court enter summary judgment in Pep Boys' favor and dismiss the ten plaintiffs' claims in their entirety.[1]

## SUMMARY OF UNDISPUTED MATERIAL FACTS

### Pep Boys' Business

Pep Boys operates 593 stores in 36 states and Puerto Rico. Statement of Undisputed Material Facts ("SUMF") at ¶ 1. Pep Boys' business is divided into two main parts: 1) sales of parts and accessories and 2) servicing of customer's vehicles. Id. at ¶ 3. Pep Boys separately tracks revenue from commercial customers on both the product sales and the service side of the business. Id. at ¶ 6.

For each of the fiscal years in the time period relevant to the ten flat rate plaintiffs (FY2000 to FY2002), each of the Pep Boys stores in which Plaintiffs worked generated more than 75% of its annual revenues from retail transactions, as opposed to transactions for resale. Id. at ¶ 7. This financial information is set forth on Pep Boy's general ledger and also is reported in its audited financial statements. Id.

Pep Boys' data regarding retail versus commercial (sales for resale) sales does not underreport commercial sales because of the explicit incentives for purchasing through a commercial account. Id. at ¶ 8. These incentives include discount pricing (which is almost always more attractive than prices available to retail customers), free delivery, special payment terms (as compared to retail sales which are always due at point of purchase), and tax-exempt treatment for commercial customers who provide sales tax exemption certificates. Id.

Additionally, Pep Boys employs a commercial sales manager ("CSM") -- at every store with

---

[1]   Although this motion focuses specifically on only ten of approximately 150 flat rate plaintiffs in this case, establishing that Pep Boys satisfied the requirements of Section 7(i) with respect to any one of them establishes that the flat rate system is not per se unlawful. Such a finding could resolve the claims of approximately one-third of the plaintiffs bringing off-the-clock claims in this matter. It also demonstrates the highly individualized and fact intensive determination that must be made to assess Section 7(i) exempt status, workweek by workweek, proving that the claims of the flat rate plaintiffs cannot be litigated on a collective basis. At the appropriate juncture, Pep Boys will challenge the appropriateness of collective treatment of the claims.

parts delivery -- whose compensation is tied to commercial sales.  <u>Id.</u> at ¶ 9.  The CSM has a

financial incentive to make sure that every commercial sale is properly recorded as such.  <u>Id.</u>

## Rationale For Flat Rate Commission System

Bruce Chidsey, Pep Boys' former Vice President of Service Operations and Customer

Relations, designed and implemented the flat rate commission system in 1993 to attract the best

of the increasingly scarce skilled mechanics and technicians in the automotive repair field to Pep

Boys and to retain them.  <u>Id.</u> at ¶¶  10, 11, 15.  Mr. Chidsey believed that the flat rate system –

commonly used in the automotive repair industry -- would be much more attractive and

remunerative to Pep Boys employees than the traditional hourly pay system because employees

could earn a higher level of compensation based on their personal productivity.  <u>Id.</u> at ¶ 12.  Pep

Boys implemented this system to achieve and maintain a competitive edge in the skilled labor

market.  <u>Id.</u> at ¶ 17.  It has operated the flat rate system, with enhancements, since 1993.  <u>Id.</u> at ¶¶

18, 27.

## How the Flat Rate Commission System Works

Flat rate employees have a commission rate of pay ("flat rate") and an hourly rate of pay

("benefit rate" or "variable benefit rate" or "VBR").  <u>Id.</u> at ¶¶ 19, 24.  The two main components

of Pep Boys' flat rate commission are *labor hours* and the individual employee's *flat rate*.  The

ten flat rate plaintiffs at issue earned a high rate of pay ($14.00 - $23.70) for revenue-generating

work that was set for them at the time of hire, promotion or evaluation.  <u>Id.</u> at ¶ 19.  Labor hours

represent standard amounts of time it should take a typical mechanic/technician to perform a

particular repair or service task, based on commercially available guides, <u>e.g.</u>, the Mitchell

Guide.<sup>©</sup>  <u>Id.</u> at ¶¶ 20, 22.  A labor hour is not a measure of actual time spent working; rather it is

an industry-wide measurement of time to complete a task.  <u>Id.</u>  The technician "books" the

standard labor hour assigned for the task, whether it takes him more or less than the standard time to complete the task. Id. at ¶ 20.

The labor hour is both the hourly increment of time Pep Boys charges the customer for the labor associated with a task and the time "booked" by the flat rate employee for performing the task. Id. at ¶ 21. Pep Boys uses two sources to determine how many labor hours to charge customers and to credit to flat rate employees for each job. Id. at ¶ 22. The Mitchell Guide© is a commercial publication used throughout the automotive repair industry which lists labor hours for every discrete service task for virtually every foreign and domestic vehicle in use in the United States. The Pep Boys Labor Guide is a proprietary database that bundles related services frequently requested by customers into "packages." Id. (describing why a package of services requires less labor than the elements of the package if performed separately). Pep Boys' flat rate employees earn their flat rate for each labor hour (or fraction thereof) they book, without regard to the actual time required to complete the task. Id. at ¶ 23. Thus, the flat rate commission system encourages and rewards employees for working faster and more efficiently. At the end of each week, Pep Boys multiplies the labor hours the employee booked times the employee's flat rate and pays that commission. Id. at ¶ 26(a).

## Pep Boys' Alternative Guaranteed Minimum Hourly Pay Method

Pep Boys requires flat rate employees to clock in and out because, although they are exempt under the Section 7(i), Pep Boys must have a record of their actual hours of work ("clock hours") to meet the FLSA recordkeeping requirements and to verify that they satisfy the Section 7(i) exemption requirements. Id. at ¶ 25. Above and beyond the Section 7(i) pay requirements, Pep Boys guarantees its flat rate employees that they will *never receive less* than their VBR (or a minimum of $6.50 per hour, whichever is higher), for the first 40 hours they work in a week and for many types of paid time off. Id. at ¶ 26(c). Pep Boys also guarantees that flat rate employees

will never earn less than one and one-half times their VBR (or a minimum of $9.75, whichever is higher) for hours above 40 they work in a week.  Id. at ¶ 26 (d) & (e).

Although it is under no legal obligation to do so, Pep Boys also computes flat rate employees' pay as if they were hourly nonexempt employees, to fulfill this promise of a minimum guarantee.  Id. at ¶ 26(b).  The two main components of this alternate payment method are the *VBR* and *clock hours*.  Id.  The VBR varies[2] based on the employee's productivity over the immediately preceding 12 weeks.  Id. at ¶ 27(a).[3]  Each week, Pep Boys' payroll system generates a Benefits Rate for Mechanics report ("BRM").  Id.  The BRM reports each flat rate employee's clock hours and labor hours over the past 12 weeks and uses that data to compute the 12-week rolling average productivity rate (labor hours ÷ clock hours) and VBR which is applicable to the current workweek.  Id.

Thus, each week, Pep Boys computes the flat rate employees' pay in two ways.  Id. at ¶ 26.  First, Pep Boys multiplies the employee's flat rate times the labor hours booked by that employee to determine the commission earned in the week.  Id. at ¶ 26(a).  Flat rate employees always receive this commission pay (unless they do not perform any labor hour work in that week, for example when on vacation, in training or sick).  Id.  Pep Boys then multiplies the actual clock hours worked by the employee times the employee's VBR (at straight time for the first 40 clock hours and at 1.5 time premium pay for all hours worked over 40) to determine the wages for the week under the guaranteed hourly pay method.  Id. at ¶ 26(b).  If the minimum pay method amount exceeds the commission earned, Pep Boys pays the difference in the form of

---

[2]     The minimum VBR is 50% of the employee's flat rate or $6.50 per hour, whichever is greater.  The maximum VBR is 85% of the employee's flat rate.  SUMF at ¶ 24.  On average, flat rate employees achieve productivity rates of 98% to 105%.  Id.

[3]     Prior to July 24, 2000, the benefit rate was fixed at 50% of the flat rate, but not less than $6.50/hour.  Id. at ¶ 18.  Pep Boys introduced the VBR to encourage these skilled employees to work full-time and to discourage them from working off the clock to artificially boost their productivity rate (which would have the effect of increasing their rate of pay for several forms of paid time off).  The enhanced system introduced in July 2000 required flat rate employees to clock 38 hours per week or more, on average, to qualify for the VBR.  Id. at ¶ 27(b).  If they did not qualify, they received the 50% benefit rate.  Id.

Mechanic's Supplemental Pay on top of the commission.  Id. at ¶ 26(c).  Therefore, every week, every flat rate employee receives as much as, but usually well more than, he would have received if he had been paid under the guaranteed minimum hourly pay method applicable to nonexempt employees.  Id.  See also Ex. 14 (Demonstrative Exhibit Illustrating Calculation of Flat Rate Pay for K. Cynova).

Even when the commission exceeds the guaranteed minimum, Pep Boys makes an additional calculation in every week in which a flat rate employee clocks more than 40 hours,[4] to assure that either (a) the employee qualified for the retail commission exemption for that week or (b) proper overtime is paid, using the formula applicable to nonexempt commissioned employees.  Id. at ¶ 26(d).  First, Pep Boys calculates the employee's FLSA regular rate of pay by dividing the total compensation for the week (less statutory exclusions in 29 U.S.C. § 207(e)) by the clock hours worked.  Id.  Pep Boys refers to this as the "average hourly rate" of pay for that week.  If the average hourly rate of pay for all hours worked is not $9.75 or more (one and one-half times the VBR, or $6.50, whichever is greater), Pep Boys pays -- in addition to commission and supplemental pay, if any -- overtime premium pay at the rate of one-half times the average hourly rate for all hours worked over 40 in that workweek.[5]  Id. at ¶ 26(e).  At this step, the flat rate system guarantees either that the flat rate employee earned commission and supplemental pay equal to or in excess of $9.75 for every clock hour worked or that the employee receives FLSA overtime premium wages for hours worked over 40 in the workweek.  Id.

---

[4]       The Pep Boys payroll program always pays overtime premium pay to flat rate employees in California and Connecticut for hours worked over 40 in a week and, in California, for hours over 8 in a day.  See Id. at ¶ 26(d) n.5.  ("If state is 'CA' or 'CT' (CT was added in 3.2000) and OT [overtime] or DOT [double-time] > 0; OT amount = OT hours * AHR; DOT amount = DOT hours * AHR").   However, these employees qualify for exemption from federal overtime under Section 7(i) of the FLSA.

[5]       Pep Boys calculates a different average hourly rate ("AHR"), over a rolling 12-week period, to set the premium rate it pays for bereavement leave, jury duty, personal holidays, training and vacation.  Ex. 11 at PBY001328; Ex. 20.  For highly productive employees, this AHR can be far more than the VBR and the flat rate.  For example, Nhut Tran received $46.36 per hour for his unused vacation hours when he left Pep Boys.  Id. at ¶ 26 (a); Ex. 15 at 147 ($7,417.60 paid for 160 hours of accrued vacation on March 27, 2001).

6

The final step to assure compliance with the requirements of the retail commission exemption under Section 7(i) is to calculate the percentage of the flat rate employee's total earnings over the immediately preceding six weeks that was earned commissions. Id. at ¶ 26(g). If less than 50% of the wages for this period were in the form of commissions, the system pays the flat rate employee overtime premium pay pursuant to 29 C.F.R. § 778.117. Id. at ¶ 26(g) & (i). If 50% or greater of the wages were in the form of commissions, all of the requirements of Section 7(i) are met and no overtime is due or paid. Id. at ¶ 26(j).

1.     **Plaintiff Juan Cardenas** filed his consent to join this case as a party plaintiff on April 14, 2003. Id. at ¶ 28. In the three years immediately preceding his joinder[6], Mr. Cardenas worked a total of 55 weeks for Pep Boys' Store 652 as a technician (April 14, 2000 to May 5, 2001). Id. at ¶ 29. Throughout this period, Mr. Cardenas had a flat rate of $18.00 and the retail sales (versus sales for resale) of Store 652 exceeded 90% of total revenues. Id. at ¶¶ 31-33.

Mr. Cardenas alleges that he worked a maximum of 5 hours per week off-the-clock. Id. at ¶ 34. Accepting his allegations as undisputed, for the purpose of this motion only, and adding 5 hours to the clock hours he recorded, Mr. Cardenas's regular rate for all hours worked was at least one and one-half times the minimum wage in every week he worked during his relevant period,. Id. at ¶ 35. In each rolling six-week period during that time, Mr. Cardenas also received at least fifty percent of his compensation in the form of flat rate commission pay. Id. at ¶ 36.

2.     **Plaintiff Frank Clyne** filed his consent to join this case as a party plaintiff on April 14, 2003. Id. at ¶ 37. In the three years immediately preceding his joinder, Mr. Clyne worked for Pep Boys' Store 734 as a mechanic a total of 66 workweeks (April 14, 2000 to July 27, 2001). Id. at ¶ 38. Throughout this period, Mr. Clyne had a flat rate of $16.30 and the retail sales of Store 734 exceeded 91% of total revenues. Id. at ¶¶ 40-42.

---

[6]     Pep Boys denies that the three year statute of limitation for willful violation of the FLSA applies. However, for the purposes of this motion, it presents evidence to establish the exemption for the maximum period of potential liability.

Mr. Clyne alleges that he worked a maximum of 5 hours off-the-clock per week.  Id. at ¶ 43.  Accepting his allegations as undisputed, for the purpose of this motion only, and adding 5 hours to the clock hours he recorded, Mr. Clyne's regular rate for all hours worked was at least one and one-half times minimum wage in every week he worked during his relevant period.  Id. at ¶ 44.  In each rolling six-week period during that time, he also received at least fifty percent of his compensation in the form of flat rate commission pay.  Id. at ¶ 45.

3.    **Plaintiff Ronald Cole** filed his consent to join this case as a party plaintiff on April 7, 2003.  Id. at ¶ 46.  In the three years immediately preceding his joinder, Mr. Cole worked a total of 37 workweeks for Pep Boys' Store 91 as a technician (April 7, 2000 to December 27, 2000).  Id. at ¶ 47.  Throughout this period, Mr. Cole received a flat rate of $20.00 and the retail sales of Store 91 exceeded 92% of total revenues.  Id. at ¶¶ 49, 50.

Mr. Cole alleges that he worked a maximum of 19 hours off-the-clock per week.  Id. at ¶ 51.  Accepting his allegations as undisputed, for the purpose of this motion only, and adding 19 hours to the clock hours he recorded, Mr. Cole's regular rate for all hours worked was at least one and one-half times minimum wage in every week he worked during his relevant period.  Id. at ¶ 52.  In each rolling six-week period during that time, Mr. Cole also received at least fifty percent of his compensation in the form of flat rate commission pay.  Id. at ¶ 53.

4.    **Plaintiff Kevin Cynova** filed his consent to join this case as a party plaintiff on April 14, 2003.  Id. at ¶ 54.  In the three years immediately preceding his joinder, Mr. Cynova worked a total of 63 workweeks for Pep Boys' Store 756 as a flat rate master technician (April 14, 2000 to July 1, 2001).  Id. at ¶ 55.  Throughout this period, he received a flat rate of $22.50 and retail sales of Store 756 exceeded 83% of total revenues.  Id. at ¶¶ 57-59.

Mr. Cynova alleges that he worked a maximum 8 hours off-the-clock per week.  Id. at ¶ 60.  Accepting his allegations as undisputed, for the purpose of this motion only, and adding 8

hours to the clock hours he recorded,[7] Mr. Cynova's regular rate for all hours worked was at least one and one-half times minimum wage in every week he worked during his relevant period. Id. at ¶ 61. In each rolling six-week period during that time, Mr. Cynova also received at least fifty percent of his compensation in the form of flat rate commission pay. Id. at ¶ 62.

     **5.**      **Plaintiff Donald Gillett** filed his consent to join this case as a party plaintiff on April 7, 2003. Id. at ¶ 63. In the three years immediately preceding his joinder, Mr. Gillett worked a total of 34 workweeks for Pep Boys' Store 642 as a flat rate mechanic (April 7, 2000 through July 10, 2002). Id. at ¶ 64-67. Throughout this period, he received a flat rate of $14.00 and retail sales of Store 642 exceeded 86% of total revenues. Id. at ¶¶ 68-71.

     Mr. Gillett alleges that he worked a maximum 4.5 hours off-the-clock per week. Id. at ¶ 72. Accepting his allegations as undisputed, for the purpose of this motion only, and adding 4.5 hours to the clock hours he recorded, Mr. Gillett's regular rate for all hours worked was at least one and one-half times minimum wage in every week he worked during his relevant period, with the exception of four (4) very unproductive weeks, for which Pep Boys paid him FLSA overtime premium pay. Id. at ¶ 73. In each rolling six-week period during that time, Mr. Gillett also received at least fifty percent of his compensation in the form of flat rate commission pay. Id. at ¶ 74.

     **6.**      **Plaintiff Horacio Muro** filed his consent to join this case as a party plaintiff on March 28, 2003. Id. at ¶ 75. In the three years immediately preceding his joinder, Mr. Muro worked a total of 24 workweeks for Pep Boys' Store 985 as a flat rate technician (March 28, 2000 to September 17, 2000). Id. at ¶ 76. Throughout this period, he received a flat rate of $19.60 and retail sales of Store 985 exceeded 86% of total revenues. Id. at ¶¶ 78-79.

---

[7]     Despite the fact that Pep Boys accepts the allegations Mr. Cynova made in his interrogatory responses regarding off-the-clock hours worked in every week through the relevant period, Mr. Cynova specifically acknowledged in his deposition testimony that in weeks in which he did not clock 40 hours, he did not work off-the-clock. Id. at ¶61 n. 8.

Mr. Muro alleges that he worked a maximum of 5 hours off-the-clock per week. Id. at ¶ 80. Accepting his allegations as undisputed, for the purpose of this motion only, and adding 5 hours to the clock hours he recorded, Mr. Muro's regular rate for all hours worked was at least one and one-half times minimum wage in every week he worked during his relevant period. Id. at ¶ 81. In each rolling six-week period during that time, Mr. Muro also received at least fifty percent of his compensation in the form of flat rate commission pay. Id. at ¶ 82.

7. **Plaintiff Charles Sparks** filed his consent to join this case as a party plaintiff on March 28, 2003. Id. at ¶ 83. In the three years immediately preceding his joinder, Mr. Sparks worked a total of 65 workweeks for Pep Boys' Store 53 as a flat rate mechanic (March 28, 2000 through July 3, 2001). Id. at ¶ 84-85. Throughout this period, Mr. Sparks received a flat rate of $16.55 from April 2, 2000 to August 13, 2000; Pep Boys increased his flat rate on August 13, 2000 to $17.00 and on April 1, 2001 to $17.85. Id. at ¶¶ 86-88. Throughout this period retail sales of Store 53 exceeded 83% of total revenues. Id. at ¶ 89.

Mr. Sparks alleges that he worked a maximum of 20 hours off-the-clock per week. Id. at ¶ 90. Accepting his allegations as undisputed, for the purpose of this motion only, and adding 20 hours to the clock hours he recorded, Mr. Sparks's regular rate for all hours worked was at least one and one-half times minimum wage in every week he worked during his relevant period. Id. at ¶ 91. In each rolling six-week period during that time, Mr. Sparks also received at least fifty percent of his compensation in the form of flat rate commission pay. Id. at ¶ 92.

8. **Plaintiff Nhut Tran** filed his consent to join this case as a party plaintiff on March 28, 2003. Id. at ¶ 93. In the three years immediately preceding his joinder, Mr. Tran worked a total of 51 workweeks for Pep Boys Store 660 as a flat rate master technician (March 28, 2000 to March 22, 2001). Id. at ¶ 94. Throughout this period, he received a flat rate of $23.70 and retail sales of Store 660 exceeded 91% of total revenues. Id. at ¶¶ 96-98.

Mr. Tran alleges that he worked a maximum of 12 hours off-the-clock per week.  Id. at ¶ 99.  Accepting his allegations as undisputed, for the purpose of this motion only, and adding 12 hours to the clock hours he recorded, Nhut Tran's regular rate for all hours worked was at least one and one-half times minimum wage in every week he worked during his relevant period.  Id. at ¶ 100.  In each rolling six-week period during that time, Nhut Tran also received at least fifty percent of his compensation in the form of flat rate commission pay.  Id. at ¶ 101.

9.      **Plaintiff Phong Tran** filed his consent to join this case as a party plaintiff on April 7, 2003.  Id. at ¶ 102.  In the three years immediately preceding his joinder, Mr. Tran worked a total of 31 workweeks for Pep Boys' Store 653 as a flat rate mechanic (April 7, 2000 through November 15, 2000).  Id. at ¶ 103.  Throughout this period, he received a flat rate of $17.25 and retail sales of Store 653 exceeded 87% of total revenues.  Id. at ¶¶ 105-106.

Phong Tran alleges that he worked a maximum of 14 hours off-the-clock per week.  Id. at ¶ 107.  Accepting his allegations as undisputed, for the purpose of this motion only, and adding 14 hours to the clock hours he recorded, Phong Tran's regular rate for all hours worked was at least one and one-half times minimum wage in every week he worked during his relevant period.  Id. at ¶ 108.  In each rolling six-week period during that time, Phong Tran also received at least fifty percent of his compensation in the form of flat rate commission pay.  Id. at ¶ 109.

10.      **Plaintiff David Zoller** filed his consent to join this case as a party plaintiff on March 28, 2003.  Id. at ¶ 110.  In the three years immediately preceding his joinder, Mr. Zoller worked a total of 26 workweeks for Pep Boys' Store 137 as a flat rate mechanic (March 28, 2000 to October 1, 2001).  Id. at ¶ 111.  He transferred to Store 147 and worked a total of 97 weeks as a flat rate mechanic (October 1, 2001 to August 20, 2002).  Id. at ¶ 112.  From March 28, 2000 through April 2, 2000, Mr. Zoller received a flat rate of $16.40; Pep Boys increased his flat rate to $17.50 on April 2, 2000 and to $17.85 on April 1, 2001.  Id. at ¶¶ 114-116.  Throughout this

period, retail sales in Stores 137 and 147 exceeded 81% and 79%, respectively. Id. at ¶¶ 117-120.

Mr. Zoller alleges that he worked a maximum of 8 hours off-the-clock per week. Id. at ¶ 121. Accepting his allegations as undisputed, for the purpose of this motion only, and adding 8 hours to the clock hours he recorded, Mr. Zoller's regular rate for all hours worked was at least one and one-half times minimum wage in every week he worked during his relevant period. Id. at ¶ 122. In each rolling six-week period during that time, Mr. Zoller also received at least fifty percent of his compensation in the form of flat rate commission pay. Id. at ¶ 123.

## ARGUMENT

Pep Boys is entitled to summary judgment if there is no genuine dispute over a material fact, and judgment may be entered as a matter of law. Fed R. Civ. P. 56(c); see also Brumbalough v. Camelot Care Ctrs., Inc., 427 F.3d 996, 1000 (6th Cir. 2005). Summary judgment is not a "disfavored procedural shortcut," but an integral part of the federal rules, which are designed to "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

Plaintiffs are not entitled to a trial based on bare allegations. Id. at 324. Rather, as nonmoving parties, they must come forward with significant probative evidence to support their claims. Id. A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non- movant]." In re Morris, 260 F. 3d 654, 665 (6th Cir. 2001) (citing, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). The facts, viewed in the light most favorable to Plaintiffs, do not leave any genuine issue of material fact that they are exempt under Section 7(i) of the FLSA.

**PLAINTIFFS ARE EXEMPT UNDER THE FLSA'S RETAIL COMMISSION EXEMPTION.**

Plaintiffs qualify for exemption under the "retail commission" or "Section 7(i)" exemption of the FLSA. 29 U.S.C. § 207(i). Employers must pay overtime premium compensation for hours worked in excess of 40 in a workweek *unless the employees are exempt* under any one of several defined exemptions. 29 U.S.C. § 207(a) (emphasis added). Pep Boys must establish that all three elements of the "retail commission" are met with respect to its flat rate employees. See Klinedinst v. Swift Invs., Inc., 260 F.3d 1251, 1254 (11th Cir. 2001). First, the Pep Boys stores in which plaintiffs work must be retail or service establishments. Second, Pep Boys must pay plaintiffs a regular rate in excess of one and one-half times the federal minimum wage for all hours they work in a workweek in which Pep Boys claims the exemption. Finally, plaintiffs must receive more than half of their compensation (for a representative period of not less than one month) in the form of commissions earned from the sale of goods or services. 29 U.S.C. § 207(i); 29 C.F.R. § 779.400-.421. Pep Boys has satisfied these elements for each of the ten plaintiffs who are the subject of this motion.[8]

A. **Pep Boys' Stores Are "Retail And Service Establishments."**

The undisputed factual record evidence establishes that the Pep Boys stores in which Plaintiffs worked are retail establishments within the meaning of Section 7(i) of the FLSA.[9] See Wage & Hour Interpretative Bulletin No. 6, Paragraph 25, December 1938, Revised June 1941 ("it is clear that service establishments generally repair consumer goods owned by the consuming public . . . [such as] public garages [that] repair automobiles . . .") (Attached as Ex.

---

[8] Pep Boys also has satisfied the FLSA record-keeping requirements associated with employees classified under the retail commission exemption. See 29 C.F.R. § 516.16; SUMF at ¶ 26(a).

[9] Federal courts and the Department of Labor ("DOL") have made clear that Section 7(i) is an "establishment"-based exemption. Unlike the white-collar exemptions, the focus of Section 7(i) is on the nature of the business, not on the duties of the employees. See Gieg v. DRR, Inc., 407 F.3d 1038, 1047 (9th Cir. 2005); Marshall v. New Hampshire Jockey Club, Inc., 562 F.2d 1323, 1331 (1st Cir. 1977); 2003 DOLWH LEXIS 2 (March 17, 2003) (Attached as Exhibit ("Ex.") 42).

46); see also 29 C.F.R. § 779.320 (listing automobile repair shops as establishments whose sales or service may be recognized as retail); Klinedinst v. Swift Invs., Inc., 260 F.3d 1251, 1256 (11th Cir. 2001) ("Automobile repair shops have been explicitly recognized as retail establishments."); Wood v. Central Sand & Gravel Co., 33 F. Supp. 40, 47 (W.D. Tenn. 1940) (recognizing automobile repair shop as service establishment); Reich v. Cruises Only, Inc, C.A. No. 95-660-CIV-ORL-19, 1997 WL 1507504, *5 (M.D. Fla. June 5, 1997) (noting Secretary of Labor's recognition that automobile repair shops are retail or service establishments) (attached as Ex. 43). While the DOL and the courts do not define exactly what constitutes an "auto repair" shop, there can be no genuine dispute that Pep Boys' stores principally engage in selling automotive parts and perform vehicle repair, activities commonly associated with auto repair shops. SUMF at ¶¶ 1-3.

Moreover, Pep Boys' stores satisfy the specific criteria DOL sets out for retail or service establishments. They engage in sales of goods and services, as those terms are defined and interpreted. 29 C.F.R. § 779.313; 29 U.S.C. § 203(i) (defining a "good" as "goods, wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof . . . . "); 29 C.F.R § 779.314 (stating that the term "service" "must be given a meaning consistent with its usage in ordinary speech, within the context in which it appears and with the legislative history of the exemption as it explains the scope, the purposes, and the objectives of the exemption.") Pep Boys' stores sell automotive parts ("goods") and perform vehicle repairs ("services"), both of which meet the statutory and regulatory definitions under the exemption. SUMF at ¶ 3.

Further, at least 75% of the annual dollar volume of sales in the eleven Pep Boys' stores in which Plaintiffs worked were not for resale and are recognized as retail sales or services in the

particular industry. 29 C.F.R. § 779.24 & 779.411. Pep Boys' audited, public financial records

and the testimony of its corporate representative establish the first fact for *each and every store

in which one of these Plaintiffs worked during their relevant period*. SUMF at ¶ 7.[10]  And, as

discussed above, such sales or services are recognized as retail in the auto industry by both the

DOL and the Courts.  See also 29 C.F.R. § 779.324 (stating that such a determination should be

made based on the "well-settled habits of business, traditional understanding and common

knowledge."). Thus, there can be no genuine dispute that these eleven Pep Boys' stores engage

in the sales of goods and services to the general public.

    The record also establishes that over 75 percent of Pep Boys' sales are made to the

ultimate consumer, at the end of the stream of distribution.  SUMF at ¶ 7.  Consequently, less

than 25 percent of Pep Boys' business involved the resale of goods or services.  While these Pep

Boys stores sold some automotive parts and accessories to commercial customers (mostly small,

local garages that install the parts in their customers' vehicles) and provided automotive service

and repair to commercial fleet customers, these activities constituted less than the allowable 25%

of the stores' sales, on a location by location basis.  Id.  There is no countervailing evidence in

the record.  Thus, this criterion for a retail service establishment has been satisfied.

    Finally, "[i]n determining whether a particular business is a retail or service

establishment, the Court must consider not only these definitions, but also whether the business

possesses certain attributes that are generally associated with retail or service establishments."

---

[10]    Stated in another way, 29 C.F.R. § 779.313 requires "that not over 25 percent of the sales of goods and services (measured by annual dollar volume) may be sales for resale."  The regulations define "resale" as "the act of selling again."  29 C.F.R. § 779.331 (explaining that "a sale is made for resale where the seller knows or has reasonable cause to believe that the goods or services will be resold, whether in their original form, or in an altered form, or as a part, component or ingredient of another article."); see also Gieg, 407 F.3d at 1048 ("the distinguishing characteristic of a 'sale for resale' is that the sale is made for immediate resale") (emphasis added); DOL Wage & Hour Field Operations Handbook ("FOH") at 21ca04 (While repair of cars for other garages which in turn charge their customers for the repairs and repairs of cars for used car dealers, prior to their sale by such dealers, are sales for resale, repairs of cars used by an employee at the expense of their employers, to whom the bills are sent directly, and repairs on privately owned cars even though paid for directly by insurance companies are retail sales.) (Attached as Ex. 47).

<u>Viciedo v. New Horizons Computer Learning Ctr. of Columbus</u>, 246 F. Supp. 2d 886, 892 (S.D.

Ohio 2003).  DOL has stated that:

> Typically a retail or service establishment is one which sells goods or
> services to the general public.  It serves the everyday needs of the
> community in which it is located.  The retail or service establishment
> performs a function in the business organization of the Nation which is at
> the very end of the stream of distribution, disposing in small quantities of
> the products and skills of such organization and does not take part in the
> manufacturing process.

29 C.F.R. § 779.318(a).  Thus, there can be no genuine issue of fact that these Pep Boys stores

are retail or service establishments.

### B. Pep Boys Paid The Flat Rate Plaintiffs A Regular Rate Of At Least One And One-Half Times The Federal Minimum Wage For All Hours They Worked In All Workweeks For Which Pep Boys Claimed The Exemption.

Pep Boys paid all ten plaintiffs at issue in this motion more than $7.73 (1.5 times the

$5.15 per hour minimum wage[11]) for every hour they worked in all workweeks that it treated

them as exempt under Section 7(i).  29 U.S.C. §207(i)(1).  This is true even if Pep Boys credits

Plaintiffs with all of the off-the-clock and shaved hours they claim in this case (which Pep Boys

does only for the purposes of this motion).  SUMF at ¶¶ 35, 44, 52, 61, 73, 81, 91, 100, 108,

122.[12]  For example, Mr. Cardenas's regular rate, including all alleged off-the-clock hours,

ranged from $8.82 to $16.62 per hour during his relevant period, whereas Mr. Cynova's regular

rate varied from $14.05 to $23.39 per hour.  Pep Boys paid Mr. Gillett, the only Plaintiff who did

not receive at least $7.73 for all hours worked in his relevant period, overtime premium pay for

the weeks in which, due to his low productivity, his regular rate fell below $7.73.  SUMF at ¶ 73;

<u>see</u> <u>also</u> 1998 DOLWH LEXIS 84 (October 29, 1988) (flat rate compensation system valid under

---

[11]    This amount has been the federal minimum wage since September 1, 1997 and applies to the entire relevant
period of this action.  <u>See</u> <u>Viciedo</u>, 246 F. Supp. 2d at 895.
[12]    DOL states that "[i]n determining whether or not the employee's regular rate of pay is in excess of 1½
times the minimum hourly wage as required by sec. 7(i)(1) of the FLSA, the employer may divide the employee's
total earnings attributed to the <u>pay period</u> by the employee's total hours worked during such pay period."  FOH
21h03(b) (emphasis in the original) (Attached as Ex. 47).

1-WA/2529345.1

Section 7(i) when employer did not take the exemption in weeks in which employee's compensation fell below 1.5 times minimum wage) (Attached as Ex. 44).[13]

Thus, the second criterion for the retail commission exemption is satisfied with regard to all ten plaintiffs.

### C. More Than One-Half Of The Compensation Pep Boys Paid To Plaintiffs During Their Relevant Periods Was In The Form Of Commission.

Pep Boys also satisfied the final element of the retail commission exemption for each of the plaintiffs because each received more than one-half of his total compensation in the form of commissions from the sale of services over a representative period of time of not less than one month[14] during the entire relevant period of this case. 29 C.F.R. § 779.412. First, Pep Boys must, and has, established that its flat rate system is "bona fide."[15] Courts have interpreted this requirement to mean that the employer established the system in good faith. See e.g., Herman v. Suwannee Swifty Stores, Inc., 19 F. Supp. 2d 1365, 1371-1372 (M.D. Ga. 1998). As the uncontroverted testimony demonstrates, Pep Boys instituted this system, which enhanced the pay for mechanics and technicians, to attract and retain these highly-skilled and highly sought after employees. See SUMF at ¶¶ 11, 12, 15, 16. Pep Boys designed the system to guarantee a generous pay rate (20% or more above the minimum wage) for unproductive periods such as

---

[13]    Pep Boys' flat rate commission system was *designed* to ensure that in any week that an employee did not receive commissions totaling at least $9.75 for every hour worked, that employee was paid them overtime under the standard rules applicable to nonexempt employees paid on a commission basis. See SUMF at ¶ 26(e). Therefore, Pep Boys' flat rate system not only complies with, but well exceeds, the compensation requirements of Section 7(i).

[14]    Pep Boys measures whether at least fifty percent of an employee's income was from commissions over a rolling six week period. SUMF ¶ at 26(h). Thus, the second and final component of this requirement has been satisfied.

[15]    A guaranteed minimum rate is consistent with a bona fide commission system. The Act specifically states that "[u]nder a bona fide commission plan, all of the computed commissions will be computed as compensation representing commission even thought the amounts of commissions may not equal or exceed the guarantee or draws in some workweeks." 29 U.S.C. § 207(i); see also 29 C.F.R. § 779.416; Erichs v. Venator Group, Inc., 128 F. Supp. 2d 1255, 1260 n.6 (N.D. Cal. 2001) ("the regulations express comfort with the coexistence of a bona fide commission rate plan and downside protection."). It is when the employee earns the same amount of compensation on a regular basis, or the earnings seldom equal or exceed the "guarantee" that the bona fide status of the commission system comes into question. See 29 C.F.R. § 779.416; 1982 DOLWH LEXIS 40 (July 14, 1982) (Attached as Ex. 45). That is not the case under Pep Boys' flat rate system. See SUMF ¶ 26(e).

training, waiting time and paid time off. In mid-2000 Pep Boys further enhanced the system to raise the guaranteed rate from 50% to as much as 85% of the Plaintiffs' flat rate. Id. at ¶¶ 17-19.

The one appellate court to examine a flat rate system (virtually identical to Pep Boys' system) held as a matter of law that such a system constituted a bona fide commission system. See Klinedinst, 260 F.3d 1251. The Klinedinst plaintiffs were auto-painters, compensated based on their labor hours (as determined by the industry standard for performing a job) multiplied times an hourly rate. They received this compensation whether it took them more or less than the standardized labor hours to complete the job. The Eleventh Circuit held that the commission system was bona fide because it was a "method of providing employees with an incentive to 'hustle' to finish their jobs in order to obtain a larger number of jobs for greater compensation." Id. at 1254-1255. The Klinedinst opinion principally relied on Section 21h04(d) of the DOL's Field Operations Handbook, which expressly states that compensation derived from flat rates used in the auto industry constitute Section 7(i) commissions. (Attached as Ex. 47)[16] The Court also relied on 29 C.F.R. § 779.413(b), which states that Section 7(i) commissions "include all types of commissions customarily based on the goods and services which the establishment sells, and not exclusively those measured by 'sales' of the good and services."

Pep Boys compensation system constitutes a bona fide commission plan that falls squarely within the exemption from overtime requirements as provided by 29 U.S.C. § 207(i). See also 1998 DOLWH LEXIS 84 (October 29, 1998) (System that compensated mechanics on a "flag time" basis whereby the mechanic receives an assigned "flag rate" per hour multiplied by the "flag time" hours to determine compensation constituted a bona fide commission system for

---

[16] FOH § 21h04(d) states in part that: " Some auto service garages and car dealerships compensate mechanics and painters on the  following bases: The painter or mechanic gets so much a 'flat rate' hour for the work he or she performs. A 'flat rate' is not an actual clock hour . . . . The employee is given a certain proportion of the charge expressed in terms of so many dollars and cents per 'flat rate' hour rather than in terms of a percentage of the charge to the customer. The dealer does not change the employee's share per flat rate if the charge to the customer is changed. In such situations Wage-Hour will not deny that such payments represents 'commissions on goods or services' for purposes of Sec. 7(i)."

purposes of Section 7(i)).  Undisputed deposition testimony established that the employees had

the incentive to, and did, increase their compensation by increasing their productivity, and the

evidence shows that the plaintiffs' compensation varied according to their productivity rate.

SUMF at ¶¶ 20, 23.  *In no way was the commission system based on actual hours worked.*  Id. at

¶¶ 20-23.  These factors establish the existence of a bona fide commission system.  See e.g.,

Herman, 19 F. Supp. 2d at 1371 ("premise behind earning a commission is that the amount of

sales would increase the rate of pay").[17]

Thus, there is no question based on the undisputed evidence that the Plaintiffs were

exempt under the FLSA's retail commission exemption in all workweeks during the relevant

period of this lawsuit in which Pep Boys treated them as exempt.

## CONCLUSION

For all the reasons set out above, Pep Boys respectfully asks the Court to grant its Motion

for Partial Summary Judgment with regard to all ten plaintiffs and to dismiss their claims in their

entirety.

---

[17]        On November 29, 2005 (during the stay of discovery in this case), a television station in San Diego,
California ran a story suggesting that automotive repair shops, including Pep Boys, overcharged customers for their
repairs services (and prominently featuring Patrick Reeners, a dismissed plaintiff in this case).  SUMF at ¶ 124.  The
story stated that the biggest influence on the amount charged to the customer was the mechanics' hourly rate.  Id. at
¶ 125.  In response to this story, William Furtkevic, Associate Vice President for Marketing and Advertising for Pep
Boys, issued a statement that Pep Boys' service technicians were "non-commissioned employees, meaning they
receive no benefit by charging consumers for unnecessary service."  Id. at ¶ 126.  On February 14, 2006, Plaintiffs
deposed Mr. Furtkevic to determine why he made this statement.  Id. at ¶ 127.  Mr. Furtkevic explained that his
layman's understanding of a commission "would be a percentage that you would get off the top of a sale of
something," which did not apply, in his opinion, to Pep Boys' flat rate employees.  He further stated that he was not
familiar with the Section 7(i) exemption to the overtime requirements for the Fair Labor Standards Act.  Id. at ¶ 128.
While it has been recognized that "the most common type of commission in this country is the sales commission,"
whether compensation constitutes a commission for purposes of the 7(i) exemption should not be decided on
"dictionary meanings "or even "common legal usages."  Mechmet v. Four Seasons Hotels, Ltd., 825 F.2d 1173,
1175, 1177 (7th Cir. 1987) (finding that "no weight" should be attached to the fact that a collective bargaining
agreement referred to an employee's income as a "gratuity" as opposed to a "commission" for purposes of
determining whether the exemption applied.)

Dated: February 28, 2006                               Respectfully submitted,


/s  Michael Jones                                      /s  Kathy B. Houlihan
Mark C. Travis (Bar No. 011165)                        Kathy B. Houlihan (*Pro hac vice*)
Michael Jones (Bar No. 021294)                         Morgan, Lewis & Bockius LLP
Wimberly Lawson Seale Wright & Daves,                  1111 Pennsylvania Avenue, N.W.
  PLLC                                                 Washington, D.C. 20004
200 Fourth Avenue, North, Suite 900                    (202) 739-5073 (telephone)
Nashville, TN  37219                                    (202) 739-3001 (facsimile)
(615) 727-1000 (telephone)
(615) 727-1001 (facsimile)                             /s  Corrie L. Fischel
                                                       Corrie L. Fischel (*Pro hac vice*)
                                                       Morgan, Lewis & Bockius LLP
                                                       1111 Pennsylvania Avenue, N.W.
                                                       Washington, D.C. 20004
                                                       (202) 739-5081 (telephone)
                                                       (202) 739-3001 (facsimile)


                                                       Michael L. Banks (*Pro hac vice*)
                                                       Morgan, Lewis & Bockius LLP
                                                       1701 Market Street
                                                       Philadelphia, PA  19103-2921
                                                       (215) 963-5387 (telephone)
                                                       (215) 963-5001 (facsimile)


                                                       Counsel for Defendant, Pep Boys

| Flat Rate Plaintiff | Store is a Retail Establishment | Pay Exceeds 1.5 X Minimum Wage for All Weeks Worked | More Than 50% of Total Wages In Commissions |
|---|---|---|---|
| Juan Cardenas | ✓ | ✓ | ✓ |
| Frank Clyne | ✓ | ✓ | ✓ |
| Ronald Cole | ✓ | ✓ | ✓ |
| Kevin Cynova | ✓ | ✓ | ✓ |
| Donald Gillett | ✓ | ✓ * | ✓ |
| Horacio Muro | ✓ | ✓ | ✓ |
| Charles Sparks | ✓ | ✓ | ✓ |
| Nhut Tran | ✓ | ✓ | ✓ |
| Phong Tran | ✓ | ✓ | ✓ |
| David Zoller | ✓ | ✓ | ✓ |

*  *In the 4 weeks Mr. Gillett did not receive more than 1.5 x Minimum Wage he received 1.5 x Overtime Pay.*