IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville Division

| | | |
|---|---|---|
| ROSANN M. WILKS, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action: 3-02-0837 |
| | ) | |
| v. | ) | JUDGE TRAUGER |
| | ) | JUDGE KNOWLES |
| THE PEP BOYS | ) | |
| | ) | (JURY DEMAND) |
| Defendant. | ) | |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF
PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT**

---

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ……………………………………………...……….IV

**INTRODUCTION** ………………………………………………..…………....1

**FACTUAL BACKGROUND**………………………………………………...…….3

Pep Boys' Previous System to Compensate its Mechanics was Based on the Percentage of Labor Charged to Customers………………………………………………….………….....4

Pep Boys Moves Even Further Away from a Commission System when it Adopts a Flat Rate/Piece Rate Method of Compensation for its Mechanics……………….……………………………………………...…………4

Pep Boys' System for Compensating its Mechanics is not Related to the Amount Pep Boys' Charges its Customers……………………………………………………….………....6

Pep Boys Compensates its Mechanics to Perform Work in a Variety of Situations that Have no Relation to the Manner in Which Pep Boys Charges its Customers……………………………………………………...……….8

Pep Boys' Complicated Scheme for Compensating its Mechanics with a Guarantee or Variable Benefit Rate ("VBR") Results in the Requirement that Mechanics Perform Work Off the Clock……………………………………………………...……………….9

Pep Boys Does Not Compensate its Mechanics Time and One-Half their Regular Rate for Overtime Hours Worked..............................................................................................................10

As a result of the Large Amount of Payroll Records Pep Boys has Failed to Maintain, it is Impossible for Pep Boys to Meet its Burden of Establishing that Each Plaintiff's Flat Rate/Piece Rate Constitutes at Least Fifty Percent of that Employee's Compensation ..................................................................................11

**ARGUMENT**…………………………………………………………………13

**I.** **PEP BOYS DOES NOT COMPENSATE ITS FLAT RATE/PIECE RATE EMPLOYEES AS REQUIRED BY THE FLSA**…………………………..13

    **A.** **Pep Boys' Flat Rate Employees are Pieceworkers Covered by the FLSA…**……………………………………………….………13

**B. Pep Boys Did Not Pay Flat Rate Plaintiffs Overtime As Required under the FLSA**……………………………………………….....................17

    **1. Formula for Calculating Overtime for Pieceworkers**……........17

    **2. Pep Boys Does Not Pay Overtime to its Flat Rate Employees as Required by the FLSA**…………………………………….………18

**II. PEP BOYS' FLAT RATE EMPLOYEES ARE NOT, AS A MATTER OF LAW, EXEMPT FROM FLSA OVERTIME REQUIREMENTS UNDER SECTION 207(i)**…………………………………………….…………………………………19

    **A. Standard for Establishing an Exemption from the FLSA**…………...20

    **B. Pep Boys' Flat Rate Pay Plan is not, as a matter of law, a Commission under Section 207(i)**…………………………….…………………………………20

        **1. Plaintiffs' flat rate wages do not constitute commissions within the ordinary meaning of the word**…………………………..………………………………21

        **2. The Purposes of the FLSA are furthered if Defendant has to pay flat rate employees overtime**……………………………...……………………………22

        **3. The Department of Labor's interpretation of "commissions on goods and services" is that flat rate wages are not commission wages**…………………………………………………………25

        **4. The facts in present case demonstrate that there is no consistent proportionality between the labor charged to the customer and the labor credited to the employee**………………………………………………………29

    **C. Summary Judgment for the Defendant is improper because it has failed to prove each flat rate plaintiff received over half his wages from the application of a bona fide commission rate**……………….....................................................................32

**CONCLUSION**…………………………………………………………………...………..36

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ......................................................11

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ...........................................10

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (1960) .........................................................18

*Beacon Oil Co. v. O'Leary*, 71 F.3d 391 (1995) ...............................................................31

*Brennan v. Ace Hardware Corp.*, 495 F.2d 368 (1974) .....................................................26

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ..........................................................................................................................24

*Davidson & Jones Development Co. v. Elmore Development Co.*, 921 F.2d 1343 (1991) .......................................................................................................11

*De Waters v. Macklin*, 167 F.2d 694 (1948) ......................................................................14

*Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579 (2000) ..............................................33

*Douglas v. Argo-Tech Corp.*, 113 F.3d 67 (1997) .............................................................18

*Edwards v. McCormick*, 136 F.Supp.2d 795 (2001) ..........................................................31

*Erichs v. Venator Group, Inc.*, 128 F.Supp.2d 1255 (2001) .......................................31, 32, 33

*Fazekas v. The Cleveland Clinic Foundation Health Care Ventures*, 204 F.3d 673 (2000) .....................................................................................................15, 16

*Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468 (1999) ......................................10

*Hodgson v. Elm Hill Meants of Kentucky, Inc.*, 327 F.Supp. 1009 (1971) .......................15

*Huntley*, 2003 U.S.Dist. LEXIS at 7 (2003) ...............................................................20, 27, 30

*Huntly v. Bonner's*, 2003 U.S.Dist. LEXIS 26643 (2003) ...........................................13, 19

*Justice v. Metropolitan Government*, 4 F.3d 1387 (1993) ..................................................19

*Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251 (2001) .....................................19, 23, 25, 26

*Kort v. Diversified Collection Services*, 394 F.3d 530 (2005)..........................................31

*Mechmet v. Four Seasons Hotels, Limited*, 825 F.2d 1173 .......................................19, 20, 21, 22, 23

*Perrin v. United States*, 444 U.S. 37 (1970) .....................................................................19

*Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512 (2004) ....................................................18

*Schiller v. Mutual Benefit Life Insurance Co.*, 713 F.Supp. 1064 (1989) ..................13, 14

*Scofield v. NLRB*, 394 U.S. 423 (1969) .........................................................................13

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ..........................................................23, 26

*Sorrell v. Riker Materials Corp.*, 395 F.3d 332 (2005) .................................................33

*Takacs v. Hahn Automobile Corp.*, 246 F.3d 776 (2001) ..................................................18

*Tobin v. Keystone Manufacturing Co.*, 134 F.Supp. 231 (1952)......................................15

*United States v. Rosenwasser*, 323 U.S. 360 (1945)........................................................12

*Walling v. Harnischfeger Corp.*, 325 U.S. 427 (1945)...............................................12, 13, 14, 16

*Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945) ...................12, 15

*Wilhelm v. Credico Inc.*, 2006 U.S.Dist. LEXIS 19318 (2006).........................................32

## FEDERAL STATUTES

20 C.F.R. § 779.113 .......................................................................................................24

29 C.F.R. §§ 516.16 & 516.2............................................................................................34

29 C.F.R. § 516.2............................................................................................................10

29 C.F.R. § 541.313 ........................................................................................................15

29 C.F.R. § 778.111 .......................................................................................................14, 15, 16

29 C.F.R. §§ 778.112 ...................................................................................................14

29 C.F.R. 778.117 ....................................................................................................10

29 C.F.R. § 779.414 ............................................................................................20, 22

29 C.F.R. §779.416 ..................................................................................................31

29 U.S.C. §§ 207(a) & 216 ......................................................................................16

29 U.S.C. § 207 ........................................................................................................18

FRCP 30(b)   ................................................................................................................5

# INTRODUCTION

Defendant Pep Boys has moved for partial summary judgment with regard to ten individual flat rate plaintiffs who worked for Pep Boys as mechanics, technicians, and master technicians (collectively referred to as "mechanics").[1]  Pursuant to Federal Rule of Civil Procedure 56(c) and local rule 8(b)(7), plaintiffs both respectfully oppose Pep Boys motion for partial summary judgment and request that this court enter summary judgment in their favor concerning the legality of Pep Boys' method of compensating its flat rate employees as defendant is not able to meet its burden of establishing that its mechanics are exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA").[2]

Pep Boys concedes that it does not compensate its mechanics time and one-half their regular rate for hours worked over forty per week.  Rather, in an attempt to defend its failure to pay mechanics statutory overtime, Pep Boys claims that these ten mechanics are exempt from the FLSA's overtime provisions pursuant to the retail and service exemption set forth in Section 7(i) of the Act for employees paid on a commission basis.  Despite Pep Boys artful characterization to the contrary, its mechanics are not paid on a commissioned basis.  Indeed, Pep Boys' claim that its mechanics are exempt from the FLSA is nothing more than a post-hoc strategy to defend itself from this lawsuit and is not grounded in reality.  For example, Pep Boys has always identified its mechanics as

---

[1] The decision to move for partial summary judgment with regard to these ten plaintiffs is both unexpected and unusual, considering defendant Pep Boys' steadfast refusal to use representative test plaintiffs for the purposes of trial and dispositive motions.  Plaintiffs repeatedly suggested the use of representative plaintiffs in order to simplify the discovery process as well as to conserve the resources of this Court.  Defendant, however, insisted on moving forward with individualized discovery at great expense to the parties and unnecessarily consuming this Court's time.  This motion is nothing more than an attempt by the Defendant to take advantage of a process it never agreed to utilize.
[2] Pep Boys failed to appropriately credit the flat rate employees for the actual hours they worked by shaving time from their records and requiring them to work off the clock.  Defendant does not deny (for the purposes of its motion) plaintiffs' claims that Pep Boys failed to credit them for all their actual hours worked.

non-exempt.  It has even made an explicit admission that these employees are not compensated on a commission basis.  Notably, Pep Boys did not amend its answer to include as an affirmative defense the 7(i) defense until late in this litigation.  Rather, Pep Boys mechanics are quintessential piece rate workers to whom Pep Boys is obligated to pay overtime compensation.

Even if this court determined that Pep Boys' system for compensating its mechanics constitutes a commission system under the Act, summary judgment in Pep Boys favor would still not be proper as a genuine issue of material fact remains on the subject of whether these employees receive more than half of their pay from commission.  Specifically, to qualify for the retail and service exemption, Pep Boys must prove that its mechanics' piece rate pay constitutes "commissions on goods and services" ***and*** that each employee's flat rate wage constituted more than half of the employee's pay for all relevant periods.  Pep Boys, however, requires its mechanics to perform work off the clock.  Furthermore, Pep Boys has failed to maintain a substantial portion of its payroll records.  As a result, Pep Boys cannot meet its burden of establishing that 50% of the amount it pays each of the 10 mechanics at issue in this motion is constitutes "commissions on goods and services" – an essential element to Pep Boys' claim that its mechanics are exempt pursuant to Section 7(i).

Because the flat rate system used by Pep Boys is not a bona fide commission system, this Court should also rule, as a matter of law, on the legality of defendant's compensation system.  The undisputed record evidence as presented by Pep Boys itself clearly reveals that the formula by which flat rate employees' compensation is calculated does not satisfy the requirements of the FLSA and its implementing regulations.

# FACTUAL BACKGROUND

The parties are in agreement with regard to the material aspects of Pep Boys' flat rate compensation system, although plaintiffs dispute defendant's characterization of those facts. Although material issues of fact exist prohibiting entry of summary judgment in Pep Boys' favor, there are no genuine issues as to any material facts that would preclude summary judgment for the plaintiffs in this case. Defendant's repeated references to its flat rate method of compensating its mechanics and technicians as a "flat rate *commission* system" in court filings and exhibits created for the purpose of this litigation do not change the facts surrounding its actual operation. The record demonstrates that Pep Boys compensated its flat rate employees on a job or piece rate that does not bear a proportional relationship to the labor costs charged to its customers. Indeed, prior to the period covered by this lawsuit, Pep Boys *did* pay its mechanics and technicians on a "percentage of labor" basis for a short time; that system, however, was drastically different from the flat rate system at issue in this case.

## Pep Boys' Previous System to Compensate its Mechanics was Based on the Percentage of Labor Charged to Customers[3]

Prior to 1992, Pep Boys compensated its mechanics, technicians, and master technicians on an hourly basis. Plaintiffs' Supp. at ¶ 147. In approximately 1993, Pep Boys changed the way it compensated these employees, from hourly to a percentage of labor system. SUMF at ¶ 10; Plaintiffs' Response to SUMF at ¶ 11. Under the percentage of labor system, employees were paid a direct percentage of the labor charged to

---

[3] As noted in the Plaintiffs' Response to the Statement of Undisputed Facts, the term "commission" holds a specific legal meaning in the context of a FLSA case such as this, and a pay system's designation as such constitutes a conclusion of law. The percentage of labor pay system briefly used by defendant may or may not meet the definition of "commission" for purposes of Section 207(i). Considering the question of whether the percentage of labor system has been neither briefed or argued, plaintiffs do not concede that it qualifies as a commission under the Act. The percentage of labor system, however, was no longer in use during the period of time covered by this lawsuit, and this issue need not be resolved by this Court.

customers for each job they performed. SUMF at ¶ 17; Plaintiffs' Response to SUMF at ¶ 11; Plaintiffs' Supp. at ¶ 148. Apparently, Pep Boys found, however, that the percentage of labor system was undesirable for several reasons. First, it became apparent that in at least some regions, the percentage of labor system was paying employees too much. Plaintiffs' Response to SUMF at ¶ 11. Second, by keying the employees' pay to the cost of labor charged to a customer, there was substantial variation in employee pay across the nation because the labor costs at each shop were different. Plaintiffs' Supp. at ¶ 149(b). Finally, it reduced the employees' compensation when the company offered promotional discounts to customers, which in turn made it difficult to convince employees to perform those services. Id. at ¶ 149(c). To address these concerns, Pep Boys moved to the flat, job rate system at issue in this case. Id. at ¶ 149.

<u>Pep Boys Moves Even Further Away from a Commission System when it Adopts a Flat Rate/Piece Rate Method of Compensation for its Mechanics</u>[4]

After using the failed percentage of labor compensation system for roughly six to nine months, Pep Boys adopted its flat rate (or job rate) system in 1993. SUMF at ¶¶ 10, 17. Under this system, flat rate employees have a set wage or flat rate. Id. at ¶¶ 11, 23; Plaintiffs' Response to SUMF at ¶¶11, 23. After completing a service job, a flat rate employee is credited with a certain number of "labor hours" according to the Mitchell Labor Guide (an industry time guide) or an internal Pep Boys time guide. SUMF at ¶¶ 19, 20, 22; Plaintiffs' Response to SUMF at ¶¶ 19, 20, 21, 22. These time guides estimate the average time it should take to complete any number of automotive services on a wide

---

[4]     Despite the defendant's repeated references to the "flat rate commission system," Pep Boys' employees did not understand that they were being paid on commission. Plaintiffs' Supp. at ¶ 151. The term commission was not used to describe the flat rate pay system. Id.  Instead, it was (understandably) referred to as the flat rate system by employees. Id.. Notably, the Employee Handbook simply calls it "The Mechanics and Technicians' Compensation System." Ex. 11.

variety of makes and models of cars. SUMF at ¶ 20; Plaintiffs' Response to SUMF at ¶ 20. In principle, the employee receives the full time provided by the guide regardless of how long he actually takes to complete the job. Id. A completed labor hour is sometimes referred to as a "booked hour." Plaintiffs' Response to SUMF at ¶ 19. At the end of the week, the employee's booked hours are totaled and multiplied by the employee's flat rate. Id.; SUMF at ¶ 19. This results in his flat rate wage. Id.

The flat rate system addressed several of Pep Boys' concerns regarding the percentage of labor system because, according to the designer of the flat rate system, Bruce Chidsey,[5] "the flat rate really has nothing to do with prices, it has everything to do with time." Plaintiffs' Supp. at ¶ 150; Ex. C (Chidsey Dep.). By disassociating employee compensation from the cost of labor paid by customers, Pep Boys introduced uniformity and consistency to the pay system. Plaintiffs' Supp. at ¶ 149. Now, if a customer receives a service for free or brings in a coupon for a reduced price, the mechanic who performs the service receives his full piece rate pay for that job. Id. at ¶ 161. His income is no longer dependent on the labor costs paid by the customer. Id. Similarly a flat rate employee in Denton, Texas would receive the same labor credit for a job as a flat rate employee in New York City. Id. at ¶ 149(b). Thus, the new flat rate system eliminates the extreme geographic discrepancies that were present in the percentage of labor system. Id. As explained in greater detail below, there is no proportionality between what Pep Boys charges its customers and what it pays mechanics and technicians under the flat rate system. Id at ¶ 155; see also, Plaintiffs' Response to SUMF at ¶¶ 21, 22, 23. Under its previous percentage of labor system, an employee would consistently receive between

---

[5] Bruce Chidsey, Pep Boys' former Vice President of Service Operations and Customer Relations, was produced by Pep Boys as a FRCP 30(b)(6) witness.

30% and 33% of the labor charged to the customer regardless of the amount the store charges the customer for labor, the time it takes to complete the job, whether the job is performed at a reduced rate, or the labor hours prescribed by an industry guide. See Plaintiffs' Supp. at ¶ 148. In contrast, under the flat rate system an employee is paid a set piece rate for each job so that if expressed as a percentage of labor charged to the customer, that percentage varies greatly depending on the aforementioned factors. See, SUMF at ¶ 20; Plaintiffs' Response to SUMF at ¶ 21; Ex. QQ (demonstrative exhibit showing compensation paid to employees per job expressed as percentage of charge to the customer under the Pep Boys Labor Guide).

<u>Pep Boys' System for Compensating its Mechanics is not Related to the Amount Pep Boys' Charges its Customers</u>

Pep Boys assigns labor hours to a service or repair based on two guides. SUMF at ¶ 22; Plaintiffs' Response to SUMF at ¶ 22. The Mitchell Guide is an industry standard, which assigns labor hours based upon the manufacturer's recommendations. Plaintiffs' Response to SUMF at ¶ 20. The Pep Boys guide is unique to Pep Boys and assigns labor hours according to alternative rates, usually for frequently performed services or package deals. Id.; SUMF at ¶ 22. Frequently, and for various reasons, there is no correlation between the time credited to mechanics and technicians and the labor hours charged to customers. Plaintiffs Response to SUMF at ¶ 21. See also, Plaintiffs' Supp. at ¶ 155. For instance, mechanics and technicians regularly performed warranty, bring-back, and customer satisfaction work for free or at a reduced rate, while receiving full or partial credit at their piece rate (i.e., flat rate) for the job. Id. at ¶¶ 159, 160, 162.. Under the flat rate system, reduction in charges to customers for promotional reasons do not affect a

mechanic or technician's labor credit for a particular job. Plaintiffs' Supp. at ¶ 161; Plaintiffs' Response to SUMF at ¶ 21.

There are also important differences between the Mitchell Guide and the Pep Boys Guide. The Pep Boys Guide includes a number of bundled services or package deals, which are provided to the customer at a lower cost than if the services were paid for separately. SUMF at ¶ 22; Plaintiffs' Response to SUMF at ¶ 22. Often, these package deals provide the same labor credit to the mechanic as if he had performed the services separately, despite the reduced cost to the customer. Plaintiffs' Supp. at ¶ 157. Additionally, in many cases the Pep Boys Guide provides that customers should be charged a preset fixed price rather than by an amount of time for the job performed on his or her vehicle. Id. at ¶ 156. Thus, the Pep Boys Guide does not charge the same proportion of labor to the customer as it credits to its flat rate employees. For example, in the case of battery extender service, the customer is charged five dollars in labor while the mechanic is assigned two-tenths (.2) of a labor hour. Id. at ___; Ex. PP (demonstrative exhibit showing labor hours credited to mechanics vs. labor hours charged to the customer under the Pep Boys Labor Guide). At a store that charges $72 per hour for labor, the customer is charged seven-hundredths of an hour (.07) for labor, while the mechanic is credited with two-tenths (.2) of an hour. Id. (demonstrative exhibit PP contains further examples).

Furthermore, employees are regularly credited with additional labor hours if a job takes longer than expected by no fault of the mechanic, while the customer is not charged for additional labor. Plaintiffs' Supp. at ¶¶ 163, 164. See also, Plaintiffs' Response to

7

SUMF at ¶ 23. Similarly, service managers sometimes offer additional labor hours to entice a mechanic or technician to take a less-desirable job. Id.

<u>Pep Boys Compensates its Mechanics to Perform Work in a Variety of Situations that Have no Relation to the Manner in Which Pep Boys Charges its Customers</u>

First, Pep Boys does not provide labor credit to its mechanics for all work performed. <u>See</u> Plaintiffs' Response to SUMF at ¶ 21. For example, Pep Boys does not give its mechanics any labor credit when they replace windshield wipers, conduct alignment quick checks, conduct brake adjustments, conduct brake system inspections, replace air filters, test batteries, conduct tire rotations, install wheels (when purchased with Pep Boys tires), or install wheel covers. Plaintiffs' Supp. at ¶ 166.

Furthermore, Pep Boys often provides services at a discount to the customer such as when the customer has a coupon or the store is running a special. Plaintiffs' Supp. at ¶ 161. <u>See also</u>, Plaintiffs' Response to SUMF at ¶ 21. Other times, Pep Boys does not charge customers who "bring back" a vehicle that was not properly repaired. Plaintiffs' Supp. at ¶ 159. <u>See also</u>, Plaintiffs' Response to SUMF at ¶ 21. Similarly, many customers bring in vehicles for services covered under a warranty, which are performed at no charge to the customer. Plaintiffs' Supp. at ¶ 160. <u>See also</u>, Plaintiffs' Response to SUMF at ¶ 21. Service managers also have wide discretion in providing complimentary or customer satisfaction work to customers who are dissatisfied with their service. Plaintiffs' Supp. at ¶ 162. <u>See also</u>, Plaintiffs' Response to SUMF at ¶ 21. In each of these situations where Pep Boys does not charge its customers or provides its customers

with a discount, the mechanic normally receives the full labor credit time assigned by the guides.[6] See Plaintiffs' Supp. at ¶ 161; Plaintiffs' Response to SUMF at ¶ 21.

Additionally, service writers and service managers have wide latitude with how much labor credit they give to the mechanics and frequently manipulate the flat rate system to give labor credit to different employees than those who actually performed the work. Plaintiffs' Supp. at ¶ 165.

### Pep Boys' Complicated Scheme for Compensating its Mechanics with a Guarantee or Variable Benefit Rate ("VBR") Results in the Requirement that Mechanics Perform Work Off the Clock

Pep Boys flat rate system guarantees an employee a lower hourly wage (the Variable Benefit Rate)[7] if it is higher than the employee's flat rate wage for a given week. SUMF at ¶ 26(c). Prior to July 23, 2000, the benefit rate was 50% of an employee's flat rate. Id. at ¶ 24. After July 23, 2000, the guaranteed benefit rate varies (from a minimum of 50% to a maximum of 85% of the flat rate) based on the employee's productivity over the preceding 12 weeks. Id. At the end of a pay period, Pep Boys multiplies the number of hours the employee was on the clock ("clocked hours") by his guaranteed benefit rate or his variable benefit rate ("VBR"). Id. at ¶ 26(b). If the benefit rate wage is larger than the employee's flat rate wage, he is compensated on an hourly basis according to the benefit rate. Id. at ¶ 26(c); Plaintiffs' Response to SUMF at ¶¶ 26(c), 26(a). If the flat rate wage is greater than the benefit-rate wage, the employee is paid his flat rate wage and nothing more regardless of whether he worked overtime. Id.

---

[6] In some instances, a mechanic is required to perform a full service on a vehicle brought back by the customer "a bring-back," but only receives half the labor credit.

[7] The VBR is also used to calculate the employee's pay for certain scheduled leave such as holidays and vacation. If an employee is sick or on bereavement leave, he receives the guaranteed benefit rate of 50 percent of his flat rate wage.

The guaranteed rate is only paid for hours an employee is actually clocked in and therefore does not adequately compensate flat rate plaintiffs for the substantial work they perform off the clock. See, SUMF at ¶ 26(b); Plaintiffs' Response to SUMF at ¶ 26(b). By its very nature, the guaranteed rate is only paid in periods where a flat rate employee has low productivity (where his clocked hours are substantially higher than his booked labor hours).Plaintiffs' Response to SUMF at ¶ 27(b). See also, SUMF at ¶¶ 26(c) (calculation), 27(a). Not only are plaintiffs required to work off the clock, they are repeatedly threatened that any sustained period with low productivity will result in their discharge. Plaintiffs' Response to SUMF at ¶ 27(b). Thus, it is extremely unusual for an employee to receive his guaranteed hourly rate. See, e.g., Ex. 15 (Payroll Data for 10 Flat Rate Plaintiffs). If his labor hours were low, Pep Boys requires the employee to clock out and keep working to keep his productivity up. Plaintiffs' Response to SUMF at ¶ 27(b).

<u>Pep Boys Does Not Compensate its Mechanics Time and One-Half their Regular Rate for Overtime Hours Worked</u>

Pep Boys does not pay overtime to mechanics when they exceed their guaranteed rate. SUMF at ¶ 26(c). Rather, Pep Boys only pays overtime in weeks where mechanics' clocked hours exceed 40 *and* the guaranteed benefit rate produced a higher wage than the employee's flat rate wage. <u>Id.</u> In many weeks, plaintiffs worked in excess of 40 hours, but they did not receive overtime pay because their flat rate wage was higher than their guaranteed benefit wage. Ex. 15(Payroll Data for 10 Flat Rate Plaintiffs). Outrageously, Pep Boys' records do not accurately reflect the time mechanics are required to work off the clock. Plaintiffs' Supp. at ¶ 170; Plaintiffs' Response to SUMF at ¶ 27(b). Consequently, it is impossible to know whether, in a given week, each employee should receive their guaranteed benefit wage instead of their flat rate wage.

10

Defendant suggests that every week an employee's flat rate wage exceeds his guaranteed minimum it performs an additional computation to ensure the employee is exempt under Section 7(i). SUMF at ¶ 26(b). This is smoke and mirrors. Although Robin Williams described the logic of a computer program that may or may not perform this calculation for the defendant today, there is no record evidence to indicate Pep Boys utilized this program or process for any of the flat rate employees named in this motion. Furthermore, the program articulated by defendant is designed to consider only clocked hours. Plaintiffs' Response to SUMF at ¶ 26(b). It is therefore susceptible to the same problems as the general guaranteed benefit computation and can not accurately compute an employee's regular rate or defendant's compliance with Section 7(i). The defendant has failed to prove the existence or utilization of this particular program, nor has it produced one employee who has ever, pursuant to this program, received statutory overtime pursuant to 29 C.F.R. 778.117.

<u>As a result of the Large Amount of Payroll Records Pep Boys has Failed to Maintain, it is Impossible for Pep Boys to Meet its Burden of Establishing that Each Plaintiff's Flat Rate/Piece Rate Constitutes at Least Fifty Percent of that Employee's Compensation</u>

Each of the ten plaintiffs paid on a flat rate basis named in Pep Boys' motion for summary judgment alleges they were required to work numerous hours off the clock. <u>See</u>, SUMF at ¶¶ 34, 43, 51, 60, 72, 80, 90, 99, 107, 121; Plaintiffs' Response to SUMF at ¶¶ 34, 43, 51, 60, 72, 80, 90, 99, 107, 121. Specifically, each plaintiff has identified an average number of hours he worked off the clock each week. <u>Id.</u> Pep Boys, however, has represented these figures to be the "maximum" number of hours each plaintiff worked off the clock. <u>Id.</u> While the plaintiffs provided their best estimate of the average hours they

have worked off the clock, it is just that: an average. In some weeks, these plaintiffs worked more than that average and in other weeks they worked less.[8]

Furthermore, each plaintiff contests Pep Boys' assertion that for each rolling six-week period relevant to any plaintiff, he received at least fifty percent of his compensation in the form of flat rate pay. <u>See</u>, Plaintiffs' Response to SUMF at ¶¶ 36, 45, 53, 62, 74, 82, 92, 101, 109, 123. Defendant's demonstrative exhibit simply looks to the actual amount it paid each employee, without considering the additional overtime hours worked off the clock. <u>See</u>, <u>id.</u>; Ex. 23 (Commission vs. Other Pay). It is therefore impossible to conclude that for each relevant period, plaintiffs received at least fifty percent of his compensation in the form of his flat rate wage.

In sum, there are not genuine issues of dispute as to any material facts that would preclude summary judgment for plaintiffs in this case. Plaintiffs have taken issue with some of defendant's characterization of undisputed facts, and the conclusions they have drawn from them. There are, however, no factual disputes that would preclude summary judgment in plaintiffs' favor.

---

[8]     Off the clock violations are the most invidious type of FLSA violation as the evidence of the violation is not recorded on the time clock. The odiousness of Pep Boys' off the clock violations is further amplified by its failure to maintain and produce full and complete time card/pay roll information for each of the plaintiffs in this case as required by 29 C.F.R. § 516.2. Consequently, plaintiffs' ability to show the exact number of hours worked off-the-clock has been extremely frustrated by Pep Boys' failure to maintain and produce documents reflecting the specific hours for which plaintiffs were compensated.

    Plaintiffs normally have the burden of proving that an employer failed to compensate them for all hours worked. However, in those situations where the employer has failed to keep or produce records (such as Pep Boys) the burden of specifically proving each violation shifts from the plaintiff to the employer. Anderson v. Mt. Clemens Pottery Co. 328 U.S. 680, 688 (1946) (explaining that plaintiffs' evidence will be sufficient to the extent that it shows the extent of their work "as a matter of just and reasonable inference"). See Herman v. Palo Group Foster Home, Inc., 183 F.3d 468, 472 (6th Cir. 1999) (finding plaintiffs entitled to summary judgment where defendants failed to keep records as required by the FLSA).

    Here defendant already has the burden of proving that it is entitled to the Section 7(i) exemption. Consequently, Pep Boys cannot satisfy this burden given its failure to maintain and produce records required by the FLSA pertaining to the number of hours plaintiffs worked off-the-clock.

## ARGUMENT

As provided by Federal Rule of Civil Procedure 56(c), summary judgment is required when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Davidson & Jones Dev. Co. v. Elmore Dev. Co., 921 F.2d 1343, 1359 (6th Cir. 1991). That is the case here. While plaintiffs strenuously disagree with defendant's mischaracterizations and distortions of its flat rate pay system (in particular the post hoc designation of the system as a commission system and the repetition of that phrase ad nauseam), there is little disagreement between the parties about how the flat rate system actually works.

The record demonstrates that Pep Boys compensated its flat rate employees on a job or piece rate that does not bear a proportional relationship to the labor costs charged to its customers. The record also shows that the method defendant used to calculate the flat rate plaintiffs' pay did not comply with the FLSA. The flat rate plaintiffs are therefore entitled to summary judgment on the question of the Section 7(i) exemption as well as the lawfulness of defendant's flat rate overtime calculation.

## I.     PEP BOYS DOES NOT COMPENSATE ITS FLAT RATE/PIECE RATE EMPLOYEES AS REQUIRED BY THE FLSA

### A.     Pep Boys' Flat Rate Employees are Pieceworkers Covered by the FLSA.

It is beyond dispute that the overtime pay requirements of the FLSA apply to employees compensated on a piece work basis. *See* United States v. Rosenwasser, 323 U.S. 360 (1945); Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419 (1945).

Similarly, when employees who are compensated on a piece rate also receive a guaranteed minimum hourly wage those employees are still entitled to FLSA overtime compensation as the piece rate must "be an ingredient of the statutory regular rate." Walling v. Harnischfeger Corp., 325 U.S. 427 (1945) ("Piece work wages do not escape the force of § 7 (a) merely because they are paid in addition to a minimum hourly pay guaranteed by contract.").

In Harnischfeger, the Supreme Court described the quintessential piece rate pay system:

> [T]hese employees . . . are each paid a basic hourly rate plus an "incentive bonus" or "piecework earnings." The various jobs performed by these incentive workers are "time studied" by the management. The time which the job is shown to consume is multiplied by a "standard earning rate" per unit of time. The amount so obtained is known as the "price" placed on that job.

Id. at 428. See also Scofield v. NLRB, 394 U.S. 423 (1969) (describing the Wisconsin Motor Corporation's piece rate pay, which paid an average hourly rate based on the time it would take an "average competent operator working at a reasonable pace," as determined by an industry time study). The undisputed material facts in the present case show that Pep Boys' flat rate employees are paid pursuant to a piece rate wage. Here, as in Harnischfeger, the jobs performed by the flat rate plaintiffs are "time studied" and assigned a labor hour (or fraction thereof) based on the Mitchell Guide or the Pep Boys Guide. SUMF at ¶¶ 20, 22 The labor hour assigned to each job is multiplied by each plaintiff's flat rate (similar to the standard earning rate in Harnishferger). The result is a price for each job depending on the flat rate of the employee performing that job.

In <u>Huntly v. Bonner's</u>, 2003 U.S. Dist. LEXIS 26643 (W.D. Wash. 2003) (attached as Plaintiffs' Ex. UU ), a case that raised the Section 7(i) exemption in a factual situation very similar to the present lawsuit, the United States District Court for the Western District of Washington concluded an automotive service establishment's flat rate pay system "is more akin to piece work, where the technician is paid a set amount per task and the employer is free to keep whatever additional charges it is able to impose on the customer." <u>Id.</u> at 8. Similarly, in <u>Schiller v. Mutual Benefit Life Ins. Co.</u>, 713 F. Supp. 1064 (E.D. Tenn. 1989), the United States District Court for Eastern District of Tennessee considered a similar pay system for a mechanic " paid on the basis of a 'flat rate' per job."[9] <u>Id.</u> at 1067. The Court found that, "[i]n reality . . . plaintiff was paid on a piecework basis." <u>Id.</u>[10]

Furthermore, the existence of a guaranteed minimum hourly benefit does not affect the characterization of defendant's flat rate system. In fact, the primary regulation governing overtime pay for pieceworkers describes the rules for calculating the regular rate under a plan with a minimum hourly benefit. <u>See</u> 29 C.F.R. § 778.111(b) (Piece

---

[9] Although the case was not decided in the context of the FLSA, the Court's determination is still applicable here because it was trying to determine the appropriate categorization of plaintiff's wage for purposes of paying an insurance contract.

[10] Pursuant to the Sixth Circuit's reasoning in <u>De Waters v. Macklin</u>, 167 F.2d 694 (6th Cir. 1948), Pep Boys' mechanics are piece rate workers. In <u>De Waters</u>, the Court determined that an employee was not paid on a piece rate basis with an hourly guarantee where the plaintiff was paid a production-based bonus in addition to an hourly rate. The Court explained that the employee's bonus, was not directly tied to the individual employee's rate of production, but instead to the overall "increase in the monthly production value of the plant." <u>Id.</u> 697. The Court acknowledged that piece rate workers are covered by the FLSA's overtime rules, but found that the system at issue failed to meet the necessary requirements. The Court concluded that, without a piece rate schedule or a showing of individualized compensation based on individual productivity, the plaintiff could not be considered a piece rate employee. <u>Id.</u> (holding the bonus was more like a profit-sharing plan rather than a piece rate plan).

The flat rate system at issue in this case does not exhibit the same deficiencies as the profit-sharing plan in <u>De Waters</u>. Here, labor hours are assigned based a piece rate schedule (the Mitchell Labor Guide or the Pep Boys Guide) and employees are compensated based upon their individual productivity. None of Pep Boys' mechanics' piece rate wage results from the generalized productivity of the store; rather each individual mechanic is compensated based upon the number of labor hours he booked each week. Accordingly, based on the <u>De Waters</u>' Court's reasoning, Pep Boys' mechanics are piece rate workers entitled to FLSA overtime compensation.

rates with minimum hourly guarantee); see also Harnishfarger, 325 U.S. at 428 (setting

out the overtime requirements for a similar hybrid plan)[11]

Finally, the regulations defining payment on a fee basis pursuant to Section 13(a)

of the Act further establishes that Pep Boys' mechanics are piece rate workers.[12]

Specifically, payment on a fee basis is defined as arrangements

> characterized by the payment of an agreed sum for a single
> job regardless of the time required for its completion. These
> payments in a sense resemble piecework payments with the
> important distinction that generally speaking a fee payment
> is made for the kind of job which is unique *rather than for
> a series of jobs which are repeated an indefinite number
> of times and for which payment on an identical basis is
> made over and over again.*

29 C.F.R. § 541.313 (emphasis added). Defendant Pep Boys' flat rate system fits within

this description of piecework. See Opinion Letter, 2005 FLSA 24 (August 26, 2005)

(concluding accountants compensated on a flat rate per task were paid on a piece work

basis); see also Fazekas v. The Cleveland Clinic Foundation Health Care Ventures, 204

F.3d 673 (6th Cir. 2000) (finding work performed on a per-visit basis is not unique and

therefore constitutes piece work under the regulations).

---

[11]  Although piecework or piece rate is the more common nomenclature for a compensation scheme like the
one employed by Pep Boys, it is worth noting that the regulations capture various other expressions for the
same basic method of pay and apply the same basic rules for calculating overtime pay. See 29 C.F.R. §§
778.112 (Day rates and job rates), 778.312 (Pay for task without regard to actual hours), 778.313
(Computing overtime pay under the Act for employees compensated on a task basis); see also Part I.B,
infra.
[12] While payment on fee basis relates to whether a particular employee is falls under the FLSA's
professional exemption, it is so similar to piece rate that most determinations that an employee is not paid
on a fee basis require a discussion of the key characteristics of piece work.

B.     **Pep Boys Did Not Pay Flat Rate Plaintiffs Overtime As Required under the FLSA**

1.     **Formula for Calculating Overtime for Pieceworkers**

The Wage and Hour Division's regulations set forth a fairly straight-forward formula for calculating overtime pay on piecework wages.  The regular rate of pay for an employee paid on a piecework basis is obtained by dividing the total weekly earnings by the total number of hours worked in the same week.  "For his overtime work the piece-worker is entitled to be paid, in addition to his total weekly earnings at this regular rate for all hours worked, a sum equivalent to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week."  29 C.F.R. §§ 778.111(a).  <u>See Walling v. Youngerman-Reynolds Hardwood Co.</u>, 325 U.S. 419 (1945); <u>Tobin v. Keystone Manufacturing Co.</u>, 134 F.Supp 231 (W.D. Ark. 1952); <u>Hodgson v. Elm Hill Meants of Kentucky, Inc.</u>, 327 F. Supp. 1009 (E.D. Ky. 1971); Opinion Letter (WHD) No. 883, 1966-69 Wage Hours (CCH) P 30,893 (Nov. 7, 1968); Opinion Letter (WHD) No. 1928, 1999-02 Wage Hours (CCH) P 32, 758 (April 27, 1998).[13]

The undisputed facts set forth by the defendant demonstrate that it does not pay statutory overtime to its employees paid on a piece or job rate as required by the FLSA.  Under Section 207(a) of the FLSA, an employer must "compensate employees for overtime labor 'at a rate not less than one and one-half times the regular rate.'  Should an employer fail to comply with these mandates, employees may recover in a court action any unpaid wages or overtime compensation and 'an additional equal amount as

---

[13] In weeks where the employee is paid the difference between his piece rate wage and his hourly rate because "the total piece-rate earnings for the workweek fall short of the amount that would be earned for the total hours of work at the guaranteed rate," the guaranteed rate is the regular rate under the FLSA.  29 C.F.R. § 778.111(b).  <u>See Walling v. Harnischfeger Corp.</u>, 325 U.S. 427 (1945).

liquidated damages.'" <u>Fazekas v. The Cleveland Clinic Foundation Health Care Ventures</u>, 204 F.3d 673 (6th Cir. 2000) (quoting 29 U.S.C. §§ 207(a) & 216(b)).

> **2.      Pep Boys Does Not Pay Overtime to its Flat Rate Employees as Required by the FLSA.**

One need only look to Pep Boys' description of its payroll system to see that it fails to comply with the requirements of the FLSA.  Although Pep Boys calculates an "average hourly rate" for each flat rate employee by dividing the employee's piece rate wages by the number of clocked hours, Pep Boys does *not* pay an overtime premium of one-half times this regular rate for each hour over 40.  SUMF at ¶¶ 26(d)  Instead, the Pep Boys compares this regular rate to the flat rate employee's guaranteed hourly benefit.  SUMF at ¶¶ 26(e)(f)  As long as the regular rate is more than one and one-half times the guaranteed rate, defendant *does not* pay an overtime premium on hours over 40. <u>Id.</u> at ¶ 26(f).

That Pep Boys' system fails to comply with the FLSA can be demonstrated with a simple illustration.  Assuming an employee with a flat rate of $20 per labor hour and a guaranteed hourly rate of 50 percent ($10 per clocked hour) books 50 labor hours in a week, his flat rate wage would be $1000.  If the employee clocked 46 hours, his regular rate for the week would be $21.74 ($1000 ÷ 46).  Under the FLSA, the employee is due overtime pay at one and one-half times his regular rate ($32.61) for the 6 hours over 40 he worked in that week.  Defendant should then pay an overtime premium of $10.87 (one half the regular rate) for the six overtime hours in addition to his flat rate wage for a total wage of $1065.22.  Under its system, however, Pep Boys merely compares the employee's straight time regular rate of $21.74 to one and one-half times his guaranteed benefit rate of $10 per clocked hour ($15). Because the regular rate is greater than one

and one-half times the guaranteed benefit rate, defendant does not pay an overtime premium for the week.

As demonstrated above, Pep Boys flat rate pay system does not comply with Section 7(a) of the FLSA, requiring premium overtime pay for all hours worked over 40 in a workweek. As shown below, flat rate plaintiffs are not exempted from the FLSA's overtime pay requirements under Section 7(i). Thus, this Court should rule, as a matter of law, that Pep Boys is liable for overtime pay due to flat rate employees at the rate of one and one-half his or her regular rate for all hours worked in excess of 40 hours per week.

## II. PEP BOYS' FLAT RATE EMPLOYEES ARE NOT, AS A MATTER OF LAW, EXEMPT FROM FLSA OVERTIME REQUIREMENTS UNDER SECTION 207(i).

As explained in Part I, Pep Boys' flat rate plaintiffs are compensated on a piece rate basis. Defendant argues it is not required to pay overtime to these flat rate plaintiffs because they are covered under the retail and service establishment exemption in Section 207(i) of the Act. The exemption provides that a retail and service establishment does not violate the overtime pay requirements of Section 7(a) if:

> (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i). Defendant's flat rate system does not, as a matter of a law, constitute "commissions on goods or services." Furthermore, defendant has not met its burden of establishing by clear and convincing evidence that more than half of the flat rate plaintiffs' compensation for each representative period came from their flat rate wages.

**A.      Standard for Establishing an Exemption from the FLSA**

It is established that "[e]xemptions under the FLSA are narrowly construed against the employer." Takacs v. Hahn Auto. Corp., 246 F.3d 776, 779 (6th Cir. 2001). See also Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960). "The employer bears the burden of proving that exemption applies to the employee in question." Douglas v. Argo-Tech Corp., 113 F.3d 67, 70 (6th Cir. 1997). In order to meet its burden, the employer "must establish each element of the exemption by a preponderance of the clear and affirmative evidence." Renfro v. Ind. Mich. Power Co., 370 F.3d 512, 515 (6th Cir. 2004). In the present motion, the defendant has failed to meet its burden.

**B.      Pep Boys' Flat Rate Pay Plan is not, as a matter of law, a Commission under Section 207(i)**

The flat rate plaintiffs' wages cannot be legally construed as commission payments because they fail to meet any rudimentary standard of comparability to the labor charges paid by customers. "Whether a particular payment constitutes a commission is an issue of law to be determined in light of the legislative purpose and the characteristics of the specific compensation system at issue." Huntley v. Bonner's, 2003 U.S. Dist. LEXIS 26643, at *4. See also Klinedinst v. Swift Investments, Inc., 260 F.3d 1251, 1254 (11th Cir. 2001).

Unfortunately, "the meaning of the word 'commissions' in section 207(i) is not clear just from reading the provision." Mechmet v. Four Seasons Hotels, Limited, 825 F.2d 1173, 1175 (7th Cir. 1987). It is therefore necessary and appropriate to look beyond the statutory language to determine the meaning of the term. See Justice v. Metropolitan Gov't, 4 F.3d 1387, 1392-93 (6th Cir. 1993) (looking to legislative history and Department of Labor regulations to interpret the ambiguous phrase "employee in fire

protection activities" under Section 207(k)); <u>Mechmet</u>, 825 F.2d at 1175-76 (looking to

the legislative purpose and Department of Labor regulations to determine the meaning of

"commissions" in Section 207(i)); <u>Klinedinst</u>, 260 F.3d at 1255-56 (looking to the

legislative purpose of the FLSA overtime provisions and Department of Labor

interpretations to clarify the meaning of the term "commissions" in Section 207(i));

<u>Huntley</u>, 2003 U.S. Dist. LEXIS 26643 at *6-*10 (considering Department of Labor

regulations, the ordinary meaning of the word, and the legislative purposes of the FLSA's

overtime requirements to interpret the meaning of "commissions" in Section 207(i)).

   **1.**  **Plaintiffs' flat rate wages do not constitute commissions within
the ordinary meaning of the word.**

  It is a fundamental canon of statutory construction "that, unless otherwise defined,

words will be interpreted as taking their ordinary, contemporary meaning . . . at the time

Congress enacted the statute . . . ." <u>Perrin v. United States</u>, 444 U.S. 37, 42 (1970).

Therefore, in order to qualify for the exemption for commissions on goods and services,

"a flat rate compensation scheme must function like a commission as that term is

commonly understood." <u>Huntley</u>, 2003 U.S. Dist LEXIS at *7.

  Black's Law Dictionary defines a commission as "[a] fee paid to an agent or

employee for a particular transaction, usually as a percentage of the money received from

the transaction." Black's Law Dictionary, Sixth Edition, Bryan A. Garner (1999). The

commission on sales is no doubt "[t]he most common type of commission in this

country." <u>Mechmet</u>, 825 F.2d at 1175. In the present case, it is undisputed that the flat

rate plaintiffs are not compensated based upon a percentage of the money received from

the transaction. In fact, defendant admits that for a period of time in 1992 or 1993, it did

compensate mechanics and technicians based upon a percentage of the labor dollars

charged to the customer. SUMF at ¶ 17. For a number of reasons defendant changed from

that system to one where a mechanic or technician is "paid a fixed amount for each hour

without regard to how much his employer received for, or profited by, his services."

Huntley, 2003 U.S. Dist LEXIS at *7. In doing so, however, defendant fundamentally

changed the nature of the compensation system from one where employees were paid on

a consistent percentage of the labor charged to a customer to one where they are paid a

consistent piece or job rate.

> **2.      The Purposes of the FLSA are furthered if Defendant has to pay flat rate employees overtime**

The legislative purpose of the exemption in Section 207(i) is set forth in 29 C.F.R.

§ 779.414, which states:

> Section 7(i) was enacted to relieve an employer from the
> obligation of paying overtime compensation to certain
> employees of a retail or service establishment paid wholly
> or in greater part on the basis of commissions. These
> employees are generally employed in so-called "big ticket"
> departments and those establishments or parts of
> establishments where commission methods of payment
> traditionally have been used, typically those dealing in
> furniture, bedding and home furnishings, floor covering,
> draperies, major appliances, musical instruments, radios
> and television, men's clothing, women's ready to wear,
> shoes, corsets, home insulation, and various home custom
> orders. There may be other segments in retailing where the
> proportionate amount of commission payments would be
> great enough for employees employed in such segments to
> come within the exemption.

Conspicuously absent from this admittedly non-inclusive list are automotive

service establishments. Notably, the use of a flat rate system to compensate mechanics

was well established when Section 7(i) was adopted and amended in 1961 and 1966,

respectively. See, Plaintiffs' Supp. at ¶¶ 151, 152. Indeed, by the time the regulations

were adopted in 1970, the flat rate system was the most common compensation plan used for mechanics and technicians. Id. at 152. Despite the wide spread use of a flat rate system, the legislature specifically chose ***not*** to include flat rate mechanics when it repealed Section 213(a)(19) and enacted Section 213(b)(10) in 1966.[14] The elimination of Section 213(a)(19) and the adoption of 207(i) drastically narrowed the exception for retail and service establishments, limiting it to commissioned employees. The addition of 213(b)(10) clearly indicates Congress considered the automotive service industry when making those changes. There is no legislative history to support the contention that Congress understood mechanics at automotive service establishments to be covered by the exemption in 207(i).

There are essentially three broad purposes behind the requirement that employers should pay their employees time and a half for overtime work: (1) "to prevent workers willing . . . to work abnormally long hours from taking jobs away from workers who prefer to work shorter hours," Mechmet, 825 F.2d at 1176; (2) "to spread work and thereby reduce unemployment, by requiring an employer to pay a penalty for using fewer workers to do the same amount of work as would be necessary if each worker worked a shorter week," id.; and (3) "to protect the overtime workers from themselves: long hours of work might impair their health or lead to more accidents (which might endanger other workers as well)." Id.

Each of these purposes is furthered by requiring Pep Boys to pay its employees overtime. Indeed, there is nothing inherent in the nature of the work performed by

---

[14] "Section 13(b)(10) replaced 29 U.S.C. § 213(a)(19) which had formerly exempted "any employee of a retail or service establishment which is primarily engaged in the business of selling automobiles, trucks, or farm implements" from overtime and minimum wage requirements." Brennan v. North Bros. Ford, Inc., 1975 U.S. Dist. LEXIS 12815, at *7 (E.D. Mich. 1975).

mechanics that would justify the same type of exemption as provided for employees working in "big ticket" establishments where commission payment has "traditionally been used." 29 C.F.R. § 779.414. First, while the types of commissioned employees listed in 29 C.F.R. § 779.414 clearly work irregular and often long hours, that is not necessarily the case with mechanics and technicians. Plaintiff mechanics and technicians are regularly scheduled for approximately forty hours a week. Plaintiffs' Supp. at ¶ 169.

More importantly, the safety related purpose of the FLSA is fulfilled by the determination that Pep Boys' mechanics are covered by the Act's overtime provisions. The Bureau of Labor Statistics outlines the potentially dangerous nature of the work: "technicians frequently work with dirty and greasy parts, and in awkward positions. They often lift heavy parts and tools. Minor cuts, burns, and bruises are common, but serious accidents are usually avoided when the shop is kept clean and orderly and safety practices are observed." Id. Thus, unlike the banquet waiters in Mechmet, "working long hours in a service establishment [is] likely to result in workplace accidents that are due to worker fatigue." Mechmet, 825 F.2d at 1176. See Klinedinst, 260 F.3d at 1258-59 (Dissent) ("Unlike the banquet workers in Mechmet, who worked irregular and nonhazardous jobs, where accidents due to tiredness may not be a large concern, automobile repair, including painting, can be hazardous, and there is nothing to suggest that this work does not result in regular employment.").

The safety-related concern is not mere posturing. Plaintiff Donald Gillett was seriously injured while working after hours and off the clock at Pep Boys. Plaintiffs' Supp. at ¶ 172. The vehicle on which Mr. Gillett was working fell on him when the lift it was on broke. He reflexively reached upward in an attempt to stop the falling car; a

simple yet serious mistake considering the weight of the automobile.  This is the type of

mistake, though, that increases in likelihood with worker fatigue and supports the

application of the FLSA's overtime pay provisions to mechanics and technicians like the

flat rate plaintiffs in this case.

In sum, all three of the FLSA's legislative purposes are furthered by requiring

employers to pay overtime to automotive mechanics and technicians.

> **3.** **The Department of Labor's interpretation of "commissions on goods and services" is that flat rate wages are not commission wages.**

Under <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944), "the rulings, interpretations

and opinions of the Administrator under this Act, while not controlling upon the courts

by reason of their authority, do constitute a body of experience and informed judgment to

which courts and litigants may properly resort for guidance." <u>Id.</u> at 140.  When an

agency's interpretation is set forth in a regulation, however, it is due deference as spelled

out by the Supreme Court's ruling in <u>Chevron U.S.A. Inc. v. Natural Resources Defense</u>

<u>Council, Inc.</u>, 467 U.S. 837 (1984).

The regulations interpreting Section 207(i) identify several specific pay systems

based on sales that would qualify as commissions under the exemption.  20 C.F.R. §

779.113.  The Department of Labor has been consistent in its pronouncements regarding

the applicability of Section 207(i) to employees paid on a flat rate basis.

In a 1996 opinion letter, the Office of Enforcement Policy drew a clear distinction

between employees (in this case, "commission installers") that are paid on a percentage

of the employer's sales versus those who are compensated on a flat rate or piece rate

basis. Department of Labor Office of Enforcement Policy Opinion Letter, 1996 DOLWH

LEXIS 7 (April 3, 1996).  On the subject of Section 207(i), the Agency concluded:

> it should be noted that the information provided indicated
> that the commission installers were to be compensated on a
> percentage of the sales price of the alarm systems they
> installed. Such a method of payment would constitute
> payment on a commission basis for purposes of section 7(i)
> of the FLSA.
>
> . . . .
>
> In the situation that you present where an installer is paid a
> flat fee per installation, ***we would not consider such a
> payment to be a commission payment for purposes of
> section 7(i) of the FLSA***.

Id. (emphasis added).  See also Department of Labor Office of Enforcement Policy

Opinion Letter, No. 14NA (Sept. 20, 2004) (calculating the regular rate of pay for

installers compensated by a flat rate with a guaranteed hourly rate).

The Wage and Hour Division recently affirmed the distinction between

commissions based on the percentage of some price paid to the employer and flat rates

paid without a correlation to "the value of the service performed." Opinion Letter

(WHD), November 14, 2005.

> Flat fees paid ***without regard to the value of the service
> performed do not represent 'commissions*** on goods or
> services' for purposes of Section 7(i). ***Rather, employees
> paid a flat fee are considered to be compensated on a
> piece rate basis and not on the basis of commissions***.
> Commissions, for purposes of Section 7(i), usually denotes
> a percentage of the amount of monies paid out or received.

Id. (internal citations, quotations, and alternations eliminated) (emphasis added).  This

distinction is consistent with the common understanding of the term "commission,"

which is keyed to or based upon a percentage of the value or cost of a given transaction.

The defendant relies heavily on the Eleventh Circuit's decision in Klinedinst, 260 F.3d 1251, to support its broad interpretation of the Section 207(i) exemption. In Klinedinst, a divided panel of the Eleventh Circuit concluded an automobile painter compensated based on his "flag hours" (similar to labor hours in the present case) was paid a commission for the purposes of Section 207(i). The majority in Klinedinst relied principally on the Wage and Hour Division's Field Operations Handbook ("FOH") to support its decision.

The specific provision relied upon by the Klinedinst majority is entitled "Commissions computed as a *percentage of charges* for services." Field Operations Handbook, § 21h04 (emphasis added). This section of the FOH identifies four ways in which retail or service establishments may compute an employee's compensation and sets forth the Division's position with respect to enforcement for each. In the case of a flat rate system where the customer is charged for a specified amount of labor "regardless of the actual time it takes to perform the job" and where "[t]he employee is given a *certain proportion* of that charge expressed in terms of so many dollars and cents per 'flat rate' hour rather than in terms of a percentage of the charge to the customer," the Wage and Hour Division "*will not deny* that such payments represent 'commissions on goods or services' for purposes of Sec. 7(i)." Id. § 21h04(d) (emphasis added).

The Klinedinst majority's reliance on FOH Section 21h04(d) to support its conclusion is misplaced. First, the majority improperly affords the FOH substantial deference despite its purely interpretive character. While acknowledging the FOH is without "the force and effect of law," Brennan v. Ace Hardware Corp., 495 F.2d 368, 376 (8th Cir. 1974), and "not entitled to *Chevron* deference," Klinedinst, 260 F.3d at 1255,

the majority nonetheless finds it "persuasive."  Id.  Under Skidmore, "[t]he weight of

such a judgment in a particular case will depend upon the thoroughness evident in its

consideration, the validity of its reasoning, its consistency with earlier and later

pronouncements, and all those factors which give it power to persuade, if lacking power

to control."  Skidmore, 323 U.S. at 140.

When evaluating the factors which give an agency the power to persuade under

Skidmore, Section 21h04 of the FOH leaves much to be desired.  This is principally so

because it is difficult, if not impossible, to gauge the validity of the Department's

reasoning.  The reasoning is simply not set forth in the handbook.  Instead, Section 21h04

sets forth conclusory "guidelines for government personnel."  Brennan, 495 F.2d at 376.

Moreover, the specific language used in Section 21h04(d) demonstrates a unique

ambivalence with regard to the fact pattern described therein.  While the FOH concludes

decisively that several different payment methods *do* or *do not* constitute commissions on

goods or services for purposes of Section 7(i), Section 21h04(d) states "Wage-Hour *will

not deny* that such payments represent 'commissions on goods or services' for purposes

of Sec 7(i)."  This language must be understood as a directive to Wage and Hour Division

employees on how to proceed when faced with this particular set of facts (i.e., not to

pursue an investigation) as opposed to a clear and affirmative interpretation of the

Department's view regarding the scope of the exemption (i.e., agreement that the

employees are exempt).

Finally, due to its inconsistency with other agency pronouncements, the FOH

provision relied upon by the Klinedinst majority does not persuasively lead to the

conclusion that the flat rate plaintiffs in the present case are paid on a commission basis.[15]

In fact, the subsection immediately preceding Section 21h04(d) states that employees

paid on a flat rate basis "without regard to the value of the service performed do not

represent 'commissions on goods or services' for purposes of Sec 7(i)." Field Operations

Handbook, § 21h04(c). When considered in conjunction with the regulations, the opinion

letters of April 3, 1996, Sept. 20, 2004, and November 14, 2005, and Section 21h04(c) of

the FOH, *Section 21h04(d) is only persuasive to the extent that it is understood to apply*

*where an employee's flat rate bears a consistent proportion to the labor charged to the*

*customer*. Huntley, 2003 U.S. Dist. LEXIS at *7 (concluding that to fit within Section

21h04(c), "the amount paid to the employee must be 'a certain proportion' of the charge

to the customer"). To read the provision as applying to the present case renders it an

anomaly, hardly worthy of deference by this Court.

### 4. The facts in present case demonstrate that there is no consistent proportionality between the labor charged to the customer and the labor credited to the employee

As previously noted, the record is replete with instances where there is no

proportional correlation between the labor charged Pep Boys' customers and the labor

credit assigned to flat rate plaintiffs. The most glaring examples are those instances

where customers receive their services at a discount pursuant to a store promotion or by

---

[15] In addition to Klinedinst, defendants point to a single DOL opinion letter to support their reading of the exemption. While cited as 1998 DOLWH LEXIS 84, plaintiffs assume defendant meant to direct the Court to the letter found at 1988 DOLWH LEXIS 84. This opinion letter offers little to support the defendant's argument. Instead of analyzing whether mechanics compensated on the basis of a "flag hour" time standard are being paid "commissions" under Section 207(i), the Administrator simply accepts the assumption for the purposes of determining whether the pay system meets the requirements of 207(i) as described. It is not uncommon, however, for the Administrator to correct previously issued letters based upon inaccurate assumptions. See Department of Labor Office of Enforcement Policy Opinion Letter, 1996 DOLWH LEXIS 7 (April 3, 1996) (correcting a previously issued letter to conclude flat rate employees are not paid commissions under Section 207(i)). The 1988 letter cited by the defendant does not overcome the weight of authority opposing the broad interpretation it urges this Court to adopt.

using a coupon. Not only have numerous plaintiffs confirmed that they receive the same labor credit regardless of whether the customer is charged a lower rate, but Bruce Chidsey – the designer of the flat rate system – has testified that this was one of the main reasons Pep Boys switched to the flat rate system from the short-lived percentage of labor system used in the early 1990s. In articulating the purpose of the switch, Mr. Chidsey stressed that "*the flat rate really has nothing to do with prices*, it has everything to do with time." Defendant's Ex. 3 at 84:1-4 (Chidsey Dep.).

In addition, warranty work, customer service work, and bring-back work are all provided to the customer for free or at vastly reduced rates, while the flat rate mechanics and technicians still receive labor credit according to the Mitchell or Pep Boys guides. See, Plaintiffs' Response to SUMF at ¶ 21. Thus, on any given day a mechanic books eight labor hours, it is impossible to determine what revenue the employer may have received for those same hours. Indeed, on any given job, an employee's percentage of the labor charge paid by the customer could and did vary greatly.

Moreover, unlike the Mitchell Guide (which simply designates a period of labor time for each repair or service), the Pep Boys Guide provides a price to the customer and a labor hour designation for the mechanic or technician without any correlation between the two. For example, according to the Pep Boys Guide, a battery protection service costs the customer $5.99 ($5.00 for labor and $.99 for parts) and provides .11 labor hours to the mechanic or technician performing the service. At Pep Boys Store # 0053 in Woodbury, NJ, the flat rate charge to a customer for a labor hour is $72.00. Thus, while the customer is charged .07 of a labor hour, the employee is credited with .11 labor hours. Expressed another way, a $20 and hour flat rate employee receives 44 % of the charge to

the customer. On the other hand, the cost to a customer for an engine diagnostic is $69.99, or .97 of an labor hour in Woodbury, NJ. The labor credit for the employee performing the diagnostic, is 1 hour. In this case, the same employee receives approximately 28% of the labor charged to the customer.

The lack of any correlation between the value of the service and the labor credit awarded to flat rate mechanics and technicians is even more dramatic when one looks at certain services that are provided for free when the customer purchases a particular part. For instance, a "Battery Holddown Installation" costs the customer $6.00 (or .08 of a labor hour in Woodbury, NJ) and provides .14 of a labor hour for the installing mechanic (or 47% of the charge to the customer). If the customer purchased a battery from Pep Boys, the mechanic would still receive .14 of a labor hour in credit, while the customer would pay nothing for the service.[16]

Finally, in actual practice, employees regularly receive additional credit when jobs take longer than anticipated through no fault of the employees (with no corresponding increase in labor cost to the customer). Service writers and managers also regularly offer mechanics and technicians "extra" labor hours to entice them to undertake undesirable jobs. Finally, when one mechanic or technician is needed to assist another with a difficult job, he is frequently "given" the labor hours assigned to totally unrelated jobs performed by hourly employees in an effort to come close to the credit he would have received if he had been assigned the job with which he assisted. These examples

---

[16] The lack of any constant relationship between the labor hours credited to flat rate employees and the value of the service is even more glaring when one notes that the Pep Boys Guide often refers simply to "FR" or flat rate. According to the Pep Boys Guide, "[s]ervices indicating a flat rate (FR) are to be charged and compensated according to the Mitchell Labor Guide flat rate time only!" Pep Boys Labor Price Guide at 1-1. One must assume, then, that the rates and prices set forth in the guide do not bear the one-to-one correlation as a job priced and credited strictly according to the Mitchell Labor Guide, or the Pep Boys Guide would be completely unnecessary.

eviscerate any claim defendant makes that the flat rate plaintiffs' compensation constitute

a certain proportion to the value of the service or the labor dollars paid by the customers.

Without any showing of proportionality in payment it becomes clear that each flat

rate plaintiff is paid a more or less fixed amount for each job regardless of how much Pep

Boys receives for or benefited from his services.

> Absent some relationship between the amount charged to
> the customer and the amount paid to the employee,
> *defendant's system is more akin to piece work*, where the
> technician is paid a set amount per task and the employer is
> free to keep whatever additional charge it is able to impose
> on the customer. *Such payments are not "commissions"
> under the FLSA.*

Huntley, 2003 U.S. Dist. LEXIS at *8 (emphasis added).


**C.** **Summary Judgment for the Defendant is improper because it has
failed to prove each flat rate plaintiff received over half his wages
from the application of a bona fide commission rate**

If this Court concludes that the flat rate compensation system used by Pep

Boys does constitute "commissions on good and services" under Section 207(i), summary

judgment on this issue is still improper because it has not been established that the plan is

"bona fide" as required by Section 207(i).  In order to qualify for the exemption under

207(i) for any employee, an employer must prove: that "more than half of the employee's

compensation for a representative period (not less than one month) represents

commissions on goods or services."  Department of Labor Wage and Hour Division

Opinion Letter, 1999 DOLWH LEXIS 37 (April 1, 1999).  To accurately determine

whether each plaintiff received more than half of his pay for a representative period, it is

necessary to accurately apportion the employee's pay between his hourly pay and his

"commission" pay. To make such a determination, however, it is necessary to consider whether the commission plan is "bona fide." See 29 C.F.R §779.416.

Congress did not define or articulate what it meant by the phrase "bona fide commission rate." Erichs v. Venator Group, Inc., 128 F. Supp. 2d 1255, 1259 (N.D. Cal. 2001). As defendant concedes in its Memorandum of Law, the "inquiry is whether the employer set the commission rate in good faith." Id. (citing Herman v. Suwannee Swifty Stores, Inc., 19 F. Supp. 2d 1365, 1370 (M.D. Ga. 1998)). In other words, Pep Boys must have designed the flat rate system to qualify for the retail and services establishment exemption in good faith; it must not be contrived. See, e.g., Kort v. Diversified Collection Servs., 394 F.3d 530, 538 (7th Cir. 2005); Beacon Oil Co. v. O'Leary, 71 F.3d 391, 397 (Fed. Cir. 1995); Edwards v. McCormick, 136 F. Supp. 2d 795, 801 (S.D. Ohio 2001); Wilhelm v. Credico Inc., 2006 U.S. Dist. LEXIS 19318 at *17-*18 (D.N.D. 2006). "By utilizing the term 'bona fide' commission rate, Congress apparently envisions a smell test, one that reaches beyond the formal structure of the commission rate and into its actual effects and the purpose behind it." Erichs, 128 F. Supp. 2d at 1260.

In the present case, Pep Boys' claim that its flat rate pay plan constitutes "commissions on goods and services" does not meet the good faith "smell test." First and foremost, defendants have consistently represented that its employees were not paid on a commission basis. They have made this representation to their employees in the employee handbook, where they clearly identified the mechanic and technician positions as nonexempt under the FLSA. Moreover, Pep Boys has consistently and repeatedly declared that its mechanics and technicians "do not work on a commission basis for services or repairs performed" when representing itself to the public. On at least 10

occasions from November 17, 1999, to January 31, 2003, Pep Boys' made to media

outlets statements for public consumption vigorously denying that Pep Boys' mechanics

work on commission. It is defendant's policy to respond to media inquiries in a way that

defends "the brand" by eliminating or minimize negative publicity.

After making a concerted effort, for its own benefit, to assure the public that its

mechanics are not paid on commission it is disingenuous for Pep Boys to now claim its

so-called "flat rate commission system" is a bona fide commission system under Section

207(i). Similarly, after instructing its flat rate employees that it considers them

nonexempt for purposes of the FLSA, Pep Boys' post hoc designation of its mechanics as

exempt under the retail and service establishment exemption is both underhanded and

contrived. Even if this Court determines the flat-rate pay system meets the basic

framework of a commission system, viewing the evidence in the light most favorable to

the plaintiff, there exists a material question of fact with regard to that plan's bona fides.

See Erichs, 128 F. Supp. 2d at 1260.[17]

---

[17] Plaintiffs also contend that Pep Boys should be equitably estopped from raising Section 207(i) as a
defense to their failure to comply with the FLSA. The Sixth Circuit recently indicated it's willingness to
consider a claim of equitable estoppel in the context of the Family Medical Leave Act. Sorrell v. Riker
Materials Corp., 395 F.3d 332 (6th Cir. 2005). The Court noted many of the U.S. Courts of Appeals have
held that "an employer may be equitably estopped from challenging an employee's entitlement" to family
medical leave under the Act. Id. at 336 (citing "Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 493-94
(8th Cir. 2002) (holding that an employer was equitably estopped from asserting an affirmative defense that
an employee's leave was confined to the twelve weeks provided by the Act where the employer explicitly
guaranteed longer leave); Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 722-27 (2d
Cir. 2001) (holding that the district court could conclude on remand that an employer is equitably estopped
from challenging an employee's eligibility for leave where the employer allegedly failed to "inform its
employees of the protections of the [Act] and what was required of its employees in order that they qualify
for those protections"); Dormeyer v. Comerica Bank-Illinois, 223 F.3d 579, 582 (7th Cir. 2000) (holding
that "an employer who by his silence misled an employee concerning the employee's entitlement to family
leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense
of ineligibility to the employee's claim of entitlement to family leave")"). In the present case, Pep Boys
behavior is indistinguishable from employer in Duty. Both present a situation where an employer tells its
employees one thing and, when asked to make good on its promise, raises a formalistic defense to avoid
their legal obligations under a federal employee protection statute.

Finally, there remains a genuine issue of material fact with regard to whether, in each relevant period, each flat rate plaintiff would have received more than half of his wages from commissions had he not been required to work off the clock. Several flat rate plaintiffs and non-named plaintiff deponents recall periods where they may not have received more than half of their compensation from their flat rate wages. Although defendant produces several reports excerpting its electronic payroll data, plaintiffs note that weeks of payroll detail have either not been produced by defendant or were not maintained by defendant as required by the FLSA, which makes it nearly impossible for plaintiffs to prove their claims. Without producing these documents, this Court cannot verify the material submitted by the defendants to support their claim. Therefore defendants have failed to meet their burden in this regard.[18]

Even if defendant can prove that in most representative periods, more than 50 percent of each flat rate plaintiff's compensation was from the so-called "flat rate commission," there remains a legitimate factual dispute as to whether the ratio for each flat rate plaintiff accurately accounts for the actual hours that plaintiff worked off the clock. Furthermore, many flat rate employees were told if they had more than three weeks at less than 80 percent productivity, they would be fired. As a result, many would work off the clock, particularly in weeks when their booked hours were low. As a result, the weeks where they were most likely to receive their guaranteed benefit rate based on

---

[18] For nearly every single week defendants were required to produce documentary evidence in this case there are missing payroll detail records. For substantial portions of the discovery period, defendants produced no Payroll Detail records. For each of the ten named plaintiffs, defendants have failed to produce weeks of Payroll Detail records. Plaintiffs note that defendants are required to keep these records under the FLSA, and their failure to do so constitutes a separate violation of the Act. See 29 C.F.R. §§ 516.16 & 516.2. Defendants have produced electronic payroll data which summarizes information contained in Pep Boys' "Payroll Summary" reports for each plaintiff. These reports, as its title would indicate, merely summarize the employees hours and pay for each week. Unlike the "Payroll Detail" reports, they do not show "Hours worked each workday" as required under the Act, and which is essential for plaintiffs to effectively litigate their claims.

the number of hours clocked were the same weeks they were most likely to work off the clock. Because the number of jobs were smaller in these "slow" weeks, they would also be the weeks flat rate mechanics and technicians would be more likely to work long hours so they could increase the few labor hours they were able book. For instance, several of the flat rate plaintiffs had periods where according to defendant's payroll data the percent of their pay from the so-called "flat rate commission" was between 50% and 65%. This was particularly so when employees took vacation time during one or two the weeks factored into the rolling six-week period. These plaintiffs deserve the opportunity to make their individual factual claims to a jury.

Therefore, while the flat rate plaintiffs may have *actually* received more than half their compensation through the so-called "flat rate commission," that would not have been the case had they not been encouraged, required, or intimidated into working off the clock. It would be a perverse result if the defendant was able to satisfy its burden of proof for the Section 207(i) exemption by requiring its employees to work off the clock.

Because a genuine issue of material fact remains with respect to this element of the defendant's Section 7(i) exemption claim, summary judgment is inappropriate at this time.

**<u>CONCLUSION</u>**

For the reasons set forth above, plaintiffs respectfully ask this court to grant their Motion for Summary Judgment with regard to all flat rate plaintiffs and enter judgment on their behalf with respect to the defendant's overtime pay calculation. In the alternative, plaintiff's respectfully request this Court to deny defendant's Motion for Partial Summary Judgment with regard to the ten named flat rate plaintiffs.

DATE:  May 4, 2006                    Respectfully Submitted,


                                      ___s/ Heidi R. Burakiewicz____
                                      Gregory K. McGillivary
                                      Heidi R. Burakiewicz
                                      WOODLEY & McGILLIVARY
                                      1125 15th Street, N.W.
                                      Suite 400
                                      Washington, D.C. 20005
                                      (202) 833-8855
                                      Facsimile (202) 452-1090



                                      ___s/ Charles P. Yezbak, III___
                                      Charles P. Yezbak, III
                                      2002 Richard Jones Road
                                      Suite B-200
                                      Nashville, TN 37215
                                      (615) 250-2000
                                      (615) 250-2020 (Facsimile)
                                      yezbak@yezbaklaw.com

                                      Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that Plaintiffs' Opposition to Defendant's Motion for Partial Summary

Judgment and Cross Motion for Partial Summary Judgment was served on May 4, 2006

via electronic service to defendant's counsel of record:

Kathy B. Houlihan
Morgan, Lewis & Bockius, LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Mark C. Travis
Michael W. Jones
Wimberly Lawson Seal Wright & Daves, PLLC
200 4th Avenue, North
Suite 900
Noel Building
Nashville, Tennessee 37219


__s/ Heidi R. Burakiewicz____
Heidi R. Burakiewicz