IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROSANN M. WILKS, et al.<br><br>Plaintiffs,<br><br>v.<br><br>THE PEP BOYS<br><br>Defendant. | Civil Action: 3-02-0837<br><br>JUDGE TRAUGER<br>JUDGE KNOWLES<br><br>(DEMAND FOR JURY TRIAL) |

## DECLARATION OF GREGORY RUSS

I, Gregory Russ, hereby depose and declare that the following is true and correct to the best of my personal knowledge:

1. I am currently employed by the Pep Boys-Manny, Moe & Jack ("Pep Boys") where I hold the position of Assistant Vice President Service Operations, Eastern Division. I have held this position since approximately March 2005.

2. During the relevant period of this lawsuit (August 29, 1999 through May 3, 2003), I held two positions – Director of Service Operations (late 1997 to late 2001) and Regional Manager, Region 101 (late 2001 to July 2003).

3. In these positions, I had personal knowledge of all aspects of Pep Boys' service operations and the flat rate commission system, including the Pep Boys' Labor Price Guide ("Labor Guide").

4. I have been shown a sealed document submitted to the Court as a proposed Exhibit QQ ("Proposed Exhibit QQ"). DKT# 386 (filed June 27, 2006).

5. Proposed Exhibit QQ lists 22 services purportedly taken from the Labor Guide, dated 3/22/01) produced by Pep Boys during discovery. See Exhibit A (complete section 1 of Labor Guide, filed under seal). None of the column headings in Proposed Exhibit QQ appear in the Labor Guide, excerpts of which Plaintiffs attached as exhibit 1 to DKT# 380-1 (which was withdrawn and refiled under seal as DKT# 391).

6. The column heading "JOB (Service only)" in Proposed Exhibit QQ is not taken from the Labor Guide. The services and packages described in this column of Proposed Exhibit QQ appeared in the Labor Guide in an unlabeled column. The columns Plaintiffs labeled "JOB PRICE*" and "LABOR HOUR PER JOB (CREDITED TO EMPLOYEE)*" also did not appear in the Labor Guide. The data under those column headings in Proposed Exhibit QQ appeared under a single "Price/Rate" column in the Labor Guide.

7. I have reviewed the pages of the Labor Guide Plaintiffs cite in DKT# 380-1 at 13 n.10 as the source of the data in proposed Exhibit QQ and find only 21 of the 22 listed services. The service I did not find on the cited pages (or elsewhere in the Labor Guide) is TRANSMISSION FLUID EXCHANGE, the 20th service listed. Nor did I find any transmission fluid service under another name in the labor Guide that cost $89.99.

8. I also noted that the number of labor hours assigned for performing a "TRANSCOOLER INSTALL," the 12th service listed, is incorrect. On PBY10233, the Labor Guide assigns 1.25 hours for performing this service, not the .6 hours listed in Proposed Exhibit QQ. If the correct labor hours had been used, the compensation to the hypothetical employee would have been 33.33% of the price of this service, not 16% as proposed Exhibit QQ states.

1-WA/2592921 1

2

Case 3:02-cv-00837   Document 401   Filed 07/11/06   Page 2 of 8 PageID #: 4566

9. Although Plaintiffs label the services column "JOB (Service only)," some of the prices they list included charges other than labor. Therefore, the column Plaintiffs labeled as "EMPLOYEES (sic) PERCENTAGE OF LABOR COST TO CUSTOMER (EMPLOYEE'S COMPENSATION PER JOB/JOB PRICE)" does not express the ratio between the **labor** charged to the customer and the hypothetical flat rate employee's compensation to perform the service in March 2001. Rather, it reflects the ratio between the **price (including parts, fluids and/or a pro rated cost for the use of Pep Boys' equipment)** charged to the customer and the hypothetical flat rate employee's compensation to perform the service.

   (a) For example, the prices of both "BATTERY INSTALLATION" (which includes BATTERY PROTECTION) and "BATTERY PROTECTION," the first and second services, included felt washers and spray protectant, see Exh. A (filed under seal) at PBY10250.

   (b) The March 2001 price for the "AC QUICK CHECK," the third service listed on proposed Exhibit QQ, "include[d] 1 can of R134a ultra violet leak detection compound SKU 9076004"), see DKT# 391 at PBY10227.

   (c) The price of the "QUIET STOP BRAKE SERVICE," the fourth service listed on Proposed Exhibit QQ, included "New Raybestos Quiet Stop pads . . . [t]op off brake fluids, if necessary" and a "Limited Warranty" on the pads and the labor, see Exh. A (filed under seal) at PBY10252.

   (d) The March 2001 price for the "RUN RITE FUEL AND INDUCTION SYSTEM CLEANING," the 11th service listed, included "Run Rite 4 part cleaner," see Exh. A (filed under seal) at PBY10254.

(e) The price of "CHARGING AND STARTING SYSTEM DIAGNOSIS," the last service listed, includes a pro rated amount to cover the cost of Pep Boys diagnostic equipment (Accuracy tester and voltage tester), in addition to labor, see Exh. A (filed under seal) at PBY10250.

10. I have also been shown a sealed document submitted to the Court as Exhibit PP. DKT# 343. Exhibit PP lists the same 22 services, "JOB PRICE\*" and "LABOR HOUR PER JOB (CREDITED TO A MECHANIC," as Proposed Exhibit QQ. However, Exhibit PP purports to derive a ratio between the **price** charged to the customer and a hypothetical charge to a customer for an hour of labor ($70/hour).

11. Exhibit PP suffers from the same basic flaws as Proposed Exhibit QQ, plus one new one.

   (a) First, although Plaintiffs assert in Exhibit PP that "[f]or the purposes of this example, the only services listed are ones which do not include a charge for parts," that statement is false, as demonstrated by excerpts of the Labor Guide they did not cite. As noted in paragraph 9, above, the prices of <u>some</u> services include only labor ("CUSTOMER CHOICE OIL & FILTER CHANGE"), while the prices of other services include labor and parts, e.g., BATTERY PROTECTION; labor and supplies, e.g., AC QUICK CHECK; or labor and/or a pro rated charge for the use of Pep Boys' equipment, e.g., CHARGING AND SYSTEMS DIAGNOSIS.

   (b) TRANSMISSION FLUID EXCHANGE, the 20th service listed, was not in the Labor Guide.

   (c) Plaintiffs added one additional service to Exhibit PP that is not listed on Exhibit QQ: "EXHAUST HANGER INSTALLED (W/O OTHER EXHAUST WORK)"

12. Plaintiffs assert In Exhibit PP that "although Pep Boys Labor Guide specifies the labor credit earned by an employee for each repair, the price paid by the customer is a fixed price which has no relationship to the labor hours specified. Thus, in many instances, the labor hours earned by the employee are significantly different than the labor hours charged to the customer." Having reviewed Exhibit PP and the entire Labor Guide, and based on my personal knowledge of how Pep Boys sets prices in the Labor Guide, Exhibit PP does not provide any information about the "labor hours charged to the customer."

   (a) First, the **prices** of the services and packages Plaintiffs selected to include in Exhibit PP did not only include the labor charge for the services/packages in many instances, as demonstrated above.

   (b) The flaw in this exhibit is also exemplified by Exh. A. (filed under seal) at PBY10233 which shows ascending labor hour allocations to flat rate employees, and prices to customers, for three belt packages. The first belt package (to install two belts) allocated .8 labor hours to the flat rate mechanic and set a price of $49.99 to the customer, which included two belts. The next package allocated only one-tenth incremental hour of labor to the flat rate employee (because the vehicle had already been pulled in to the service bay, the hood opened and the belt areas exposed; the only marginal work over the two-belt package was the replacement of one more belt as the clean-up time and return of the vehicle to the parking area was covered in the first package). The price to the customer went up by $10.00 to account for the price of the third belt and the one-tenth hour of marginal labor to install it. The four-belt package allocated another one-tenth incremental hour of labor to the flat rate employee (for the marginal work of

Case 3:02-cv-00837 Document 401 Filed 07/11/06 Page 5 of 8 PageID #: 4569

replacing one more belt). The price to the customer went up by another $10.00 to cover the price of the fourth belt and the one-tenth hour of marginal labor to install it. If Plaintiffs' methodology in Exhibit PP were applied, the "JOB PRICE/CHARGE TO CUSTOMER FOR AN HOUR OF LABOR" for these three services would be 0.7141428, 0.857, and 0.9998571 respectively. But those numbers tell the Court nothing about the ratio between the **labor charge** to the customer and the compensation to the flat rate employee because the prices included 2, 3 or 4 belts respectively.

(c) Second, as an ethical matter, Pep Boys does not double-charge customers for overlapping services. See Exh. A (filed under seal) at PBY10223 ("Overlapping labor charges must be considered with multiple charges and times adjusted accordingly. Deduct ½ time from associated services.") (emphasis in original); PBY10227 ("**Be sure to adjust compensation times for overlapping services.**") (emphasis in original). Therefore, variations in labor hours allocated to flat rate employees and prices to customers occurred when services were performed in conjunction with other work (as in the belt package illustration above).

For example, Plaintiffs list EXHAUST HANGER INSTALLED (W/O OTHER EXHAUST WORK) at the last service in Exhibit PP. See PBY10232. If a flat rate employee installed an exhaust hanger while performing exhaust repairs, only .2 hours of labor were credited to the employee for the incremental labor necessary simply to install the hanger as part of the broader service and the price to the customer was reduced by $10 to reflect the deduction of overlapping labor when compared to the labor charge for the same service if performed alone. See PBY10232.

(d) Third, Plaintiffs have selected only 23 services from the Labor Guide, which lists over 300 services/packages. Twenty percent of the Labor Guide services/packages use the Mitchell Guide labor time to charge labor to the customer and to credit labor to the flat rate employee. Thirteen of the services in the Labor Guide carry no labor charge to the customer and no labor hour credit to the flat rate mechanic.

(e) Fourth, there is no basis in the Labor Guide for Plaintiffs' statement at the bottom of Exhibit PP that "in many instances the labor hours earned by the employee are significantly different than the labor hours charged to the customers," as the Labor Guide specifies only the former, never the latter.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on July 10, 2006    Signature: _____
                                           Gregory Russ

# **CERTIFICATE OF SERVICE**

I, Kathy B. Houlihan, hereby certify that a true and exact copy of Greg Russ' Second Declaration has been filed with the Court via the Court's Electronic Court Filing System (CM/ECF), on the 11th day of July, 2006, and served upon the following by the same method.

>Gregory K. McGillivary
>Heidi R. Burakiewicz
>Laura A. Brown
>Eric Hallstrom
>WOODLEY & McGILLIVARY
>1125 15TH Street, NW, Suite 1400
>Washington, DC  20005
>
>Charles P. Yezbak, III
>2002 Richard Jones Road, Suite B-200
>Nashville, TN  37215
>
>
>  /s Kathy B. Houlihan_____